Anthony W. ROY, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. 80–2118.

United States District Court, C. D. Illinois.

May 1, 1981.

John C. Taylor, Hendrix & Lierman, Champaign, Ill., for plaintiff.

David E. Worsley, Asst. U. S. Atty., Danville, Ill., for defendant.

## MEMORANDUM OPINION

### BACKGROUND

BAKER, District Judge.

### HISTORY OF THE CASE

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health and Human Services. The Secretary denied the claimant's application for the establishment of a period of disability under Section 216(i) of the Social Security Act, 42 U.S.C. § 416(i), and for disability insurance benefits as provided in Section 223 of the Social Security Act, 42 U.S.C. § 423. In an administrative review hearing, the Administrative Law Judge (ALJ) also denied the claimant's application. The Appeals Council summarily denied the plaintiff's request for review of the ALJ's decision. The claimant and the Secretary have filed cross motions for summary judgment.

I conclude that the ALJ failed both to develop an adequate record and to apply proper legal standards when weighing the evidence and making his decision. Therefore, the ALJ's decision to deny disability benefits to the claimant is not supported by substantial evidence, and summary judgment must be denied and the cause remanded for further development of the record and the taking of additional evidence.

### FACTS

The claimant, Anthony Roy, was born on March 21, 1927. He is a literate man, having completed 6 years of school. His only other formal education consists of a two week arc and acetylene welding course taken in 1974. Roy performed a variety of jobs for General Cable in Monticello, Illinois. The claimant's testimony at the administrative hearing indicates that he worked as a lead man and supervisor for 6 years, as a cabler for approximately 2 years and as a maintenance mechanic for an estimated 2 years.[1] From 1976 to 1978 the claimant operated a gas station and repaired cars in Kentucky. In 1978, the claimant returned to Illinois and went to work for Rite-Way in Rantoul, Illinois as a car mechanic. In 1978 or 1979 the claimant became a truck mechanic for Lincoln Land Moving and Storage in Champaign, Illinois.

On March 5, 1979, the claimant, filed applications for disability insurance benefits

---

1. There is a discrepancy here between the claimant's testimony and the vocational report which he filed which states he was a cabler for twelve years. (R. at 114.)

under Title II of the Social Security Act, as well as for supplemental security income under Title XVI of the Social Security Act. These claims allege disability, dating from March 1, 1979, based on deterioration of a disc, spurs on the spine, and arthritis.

On November 26, 1979, an appeal hearing was held by an administrative law judge (ALJ) to review the Social Security Administration's denial of disability benefits based on the Administration's finding that the claimant was not currently under a disability. Mr. Roy and his wife testified at the hearing. Mr. Roy was not represented by counsel.

Mr. Roy testified as to his work experience. As lead man and supervisor, the claimant loaded and unloaded reels of cables and supervised others. His most recent work as a truck mechanic he described as active, involving much bending, lifting, and moving around. His earlier work, 2 years as a maintenance repairman, the claimant and the ALJ categorized as light work, with maximum lifting of 25 pounds; his duties as an operator of a gas station included "pumping gas, changing oil, repairing cars, ordering supplies, and keeping records (R. 9, ALJ's Summary and Evaluation of the Evidence.) The ALJ did not otherwise categorize the claimant's former work.

The claimant also testified as to his physical condition. He stated that he has arthritis in his neck, spine, lower back, elbows and shoulders, causing increasing pain in his shoulders, right arm and hand, and back. He also suffers pain when bending or reaching. He is unable to lift his arms above his head and is able to lift only to just below shoulder level. Although he has swelling and pain in his right hand, Mr. Roy states that he "wouldn't want to try [to lift] any more than 15 to 20 pounds at the most." (R. 43). He can stand or sit 30 minutes to one hour before changing positions. The claimant feels he can walk one-quarter mile.

The claimant also complained in the hearing about recent stomach pains and heartburn which are aggravated by greasy or spicy foods. Maalox tablets are taken daily to alleviate the problem. The claimant testified to no other maladies. The claimant has not been hospitalized in the last 10 years.

No vocational expert testified at the trial. None of the doctors, neither the claimant's physician nor the Social Security Administration's (SSA) physicians, testified at the hearing. The record does, however, include the clinical evaluation of each of these doctors with the exception of Dr. Jones, one of the SSA's examining physicians who practices at the Veterans Hospital (VA) in Danville, Illinois. Dr. Mundt, the treating physician, diagnosed the claimant as having severe degenerative arthritis of the spine. Dr. Mundt recommended that Roy restrict his activities, not do any stooping, prolonged standing or lifting, or lifting more than 10 pounds. Dr. Mundt also recommended that Roy quit his job as a mechanic. Dr. Mundt prescribed treatment for pain which consisted of medication, Indocin, and an occasional Excedrin, accompanied by the application of wet heat. Dr. Nauman, the physician to whom Dr. Mundt referred the claimant, made a similar diagnosis of severe degenerative changes of the spine and suggested avoidance of heavy lifting, lifting not more than 20 pounds.

The SSA recommended that Mr. Roy be examined by Dr. Sukkar and Dr. Jones at the VA in Danville, Illinois. Dr. Sukkar's diagnosis differed from that of Drs. Mundt and Nauman. Dr. Sukkar found a mild scoliosis and moderate or advanced degenerative arthritis of the spine. Here the record is unclear. Dr. Sukkar's diagnosis states "advanced degenerative osteoarthritis of the spine". (R. 123) The x-ray impression states "moderate degenerative changes." (R. 124). Dr. Sukkar suggested only occasional lifting of a maximum of 20 pounds and 6 hours of standing, walking or sitting with rest periods. Dr. Jones' diagnosis is not in the record, although in the hearing the claimant offered to procure that diagnosis. All three doctors, Mundt, Nauman, and Sukkar, recommended light work rather than work as a truck mechanic.

Two other doctors, Dr. "Dirkenmanp" (illegible signature) and Dr. Phillips, after reviewing the information in the claimant's Social Security file also found the claimant capable of performing light work. Both these doctors felt the claimant was capable of performing his past jobs as a factory worker and lead man. The SSA vocational assessment specialist also found the claimant capable of performing light work and, specifically, his prior jobs as factory worker and lead man. The claimant, however, has applied with his former employer, General Cable Co., for janitorial work, and has been rejected for an unspecified reason.

THE ALJ'S DECISION

The ALJ narrowed the issue to "whether the claimant's impairments prevent him from performing his usual or·other work." The ALJ's final conclusion was that the claimant's osteoarthritis and arthritic pain were not so severe as to "prevent him from performing light work within his occupational qualifications, such as his former work as a lead man and supervisor, general maintenance repairman or gas station manager":

Based upon the weight of the evidence the following findings are made:

1. The claimant continues to meet the special disability earnings requirement of the Social Security Act through December 31, 1982.

2. The claimant was born on March 21, 1926 and completed six years of formal education. He is fully literate.

.3. The claimant has had prior work experience as a cable company lead man and supervisor, cable operator, general maintenance repairman, gas station manager, auto mechanic, and truck mechanic.

4. The evidence shows that the claimant is afflicted with moderate degenerative osteoarthritis of the spine.

5. The evidence of record fails to show that the claimant is afflicted with a severe stomach disorder.

6. The claimant has some complaints of pain but the evidence as a whole, including medical findings, is not consistent with the existence of intractable, incapacitating pain.

7. The claimant's arthritic impairment does not prevent him from performing light work not involving frequent bending and stooping, such as his former jobs as a lead man and supervisor, general maintenance repairman or service station manager.

8. In accordance with Regulations 404.-1503(e) and 416.903(e) of the Social Security Administration the claimant has not been under a "disability," as defined in sections 216(i), 223 and 1614(a)(3) of the Social Security Act, as amended, at any time through the date of this decision.

It is the finding and decision of the undersigned Administrative Law Judge that the claimant, based on his applications filed on March 5, 1979, is not entitled to a period of disability or to disability insurance benefits under the provisions of sections 216(i) and 223 of the Social Security Act, as amended, nor is he eligible for supplemental security income under the provisions of section 1614(a)(3) of the Social Security Act, as amended.

S/ Irwin I. Blumberg
Irwin I. Blumberg
Administrative Law Judge
Date: February 11, 1980

ISSUES RAISED

The claimant argues that the ALJ's decision to deny disability benefits is not supported by substantial evidence. The claimant alleges that he has met his burden of proof by creating a *prima facie* case of disability and that the ALJ failed to shift the burden of proof on the issue of "alternate employability" to the Secretary. The claimant also contends that the ALJ failed to give sufficient weight to the treating physician's evaluation of disability, disregarded the plaintiff's testimony of subjective pain and disability, and failed to call a vocational expert on the issue of alternative employability.

## SUBSTANTIAL EVIDENCE

The scope of review in a disability case is a very narrow one. The court must examine the record to determine whether the ALJ's decision is supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. 42 U.S.C. § 405(g). *Bartell v. Cohen*, 445 F.2d 80, 82 (7th Cir. 1971). The court's task is not to resolve conflicts in the evidence, nor is it to decide questions of credibility.

■ The ALJ's factual determinations must be upheld if they are supported by substantial evidence based on the record as a whole. *See Stark v. Weinberger*, 497 F.2d 1092 (7th Cir. 1974). The substantial evidence test means that the ALJ's factual findings must be upheld if they are supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusions. *Schmoll v. Harris*, 636 F.2d 1146 (7th Cir. 1980); *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980) *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842; *Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). However, this does not mean that the court must blindly accept and rubber stamp the findings of the Administrative Law Judge. *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir. 1974), *citing Byrd v. Richardson*, 362 F.Supp. 957, 959 (D.S.C. 1973).

## DEVELOPMENT OF THE RECORD

■ It is essential that the ALJ make explicit findings—on the record—of facts that are essential to the conclusion of ineligibility. *Smith v. Secretary of HEW*, 587 F.2d 857, 859 (7th Cir. 1978); *Choratch v. Finch*, 438 F.2d 342, 343 (3d Cir. 1971) The Administrative Law Judge has not only the power, but he has the duty to investigate all matters in issue and to develop the comprehensive record required for a fair determination of disability. *Diabo v. Secretary of HEW*, 627 F.2d 278 (D.C. Cir. 1980), *citing Daniels v. Mathews*, 567 F.2d 845, 848 (8th Cir. 1977); *Coulter v. Weinberger*, 527 F.2d 224, 229 (3rd Cir. 1975); *Clemmons v. Wein-*

*berger*, 416 F.Supp. 623, 625 (W.D.Mo.1976). This duty is spelled out in the Federal Regulations which govern the conduct of the ALJ in disability hearings:

The presiding officer shall inquire fully into the matters at issue and shall receive into evidence the testimony of witnesses and any documents which are relevant and material to such matters. If the presiding officer believes that there is relevant and material evidence available which has not been presented at the hearing, the presiding officer may adjourn the hearing or, at any time prior to the mailing of notice of the decision, reopen the hearing for the receipt of such evidence. 20 C.F.R. § 404.927.

Moreover, the ALJ has been granted the power to issue subpoenas requiring attendance and testimony of witnesses and the production of evidence. 20 C.F.R. § 404.-926.

■ The ALJ's duty to develop the relevant facts is particularly clear where the claimant, as here, is not represented by counsel. *Diabo v. Secretary of HEW*, 627 F.2d 278, 282 (D.C. Cir. 1980), *citing Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir. 1971); *Cutler v. Weinberger*, 516 F.2d 1282, 1296 (2d Cir. 1975); *Clemmons v. Weinberger*, 416 F.Supp. 623, 625 (W.D.Mo.1976). While the lack of counsel at the hearing, standing alone, is not sufficient grounds for reversal or remand, *Kelley v. Weinberger*, 391 F.Supp. 1337 (N.D.Ind.1974); *see also Truss v. Richardson*, 338 F.Supp. 741 (D.C. Mich.1971), the Supreme Court and federal appellate and district courts have emphasized the need for counsel in the administrative hearing. *See, e. g., Goldberg v. Kelly*, 397 U.S. 254, 270, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). Some courts have reversed and remanded where the record was insufficient to uphold a decision, in part because of the lack of counsel. *Kelley v. Weinberger*, 391 F.Supp. 1337, 1343 (N.D. Ind.1974), *citing Gold v. Secretary of HEW*, 463 F.2d 38 (2d Cir. 1972); *Webb v. Finch*, 431 F.2d 1179 (6th Cir. 1970); *Estep v. Richardson*, 465 F.2d 969 (6th Cir. 1972); *Alamo v. Richardson*, 355 F.Supp. 314 (D.C.

P.R.1972); and *Roman v. Secretary of HEW*, 355 F.Supp. 646 (D.C.P.R.1972). Even if the claimant is represented by counsel, the duty remains on the ALJ to develop the facts fully and fairly. *Kelley v. Weinberger, supra*, at 1342; *see also Garrett v. Richardson*, 363 F.Supp. 83, (D.C.S.C. 1973). The administrative record must represent a full and fair hearing of the claim for disability in order to comply with the basic requirements of fairness and procedural due process. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Smith v. Secretary of HEW*, 587 F.2d 857, 859 (7th Cir. 1978); *Diabo v. Secretary of HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980). Clearly, failure to develop the record fully is cause for remand. *Smith, supra* at 860. *Williams v. Celebrezze*, 359 F.2d 950, 954 (4th Cir. 1966).

In this case the precise foundation for the ALJ's ultimate conclusion that the claimant is not under a disability is unclear. The court should not be required to speculate as to the basis for the ALJ's conclusion. To afford a proper review of his decision by this court, the ALJ's findings must be clearly stated on the record. Those findings are especially essential to review here because the legal standard to be applied depends on the factual findings.

LEGAL STANDARDS

■ The ALJ is held not only to an exacting standard in his findings of fact but he must apply proper legal standards to those facts in order to be upheld on review. *Garrett v. Richardson*, 471 F.2d 598 (6th Cir. 1972); *Knox v. Finch*, 427 F.2d 919 (5th Cir. 1970); *Dixon v. Gardner*, 406 F.2d 1035 (4th Cir. 1969); *Flake v. Gardner*, 399 F.2d 532 (9th Cir. 1968). "The facts must be evaluated by the administrator in the light of the correct legal standards to entitle the administrative findings to the insulation of the substantial evidence test." *Black v. Richardson*, 356 F.Supp. 861, 870 (D.S.C.1973), *citing Branham v. Gardner*, 383 F.2d 614, 626 (6th Cir. 1967).

■ The Social Security Administration has adopted regulations setting forth the legal standards to be applied in disability determination cases. 20 C.F.R. ch. III, sub. P. § 404.1501 *et seq.* These regulations were adopted pursuant to the Administration's rule making authority under 42 U.S.C. § 405(a). The Administration's interpretations of the Social Security Act are entitled to great deference, especially where the Act and its legislative history support the Administration's construction. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). When Congress has delegated the authority to make a rule, rather than making the rule itself, the rule adopted by an administrative agency is an extension of the statute, carrying the force and effect of law. *Rodriguez v. United States Parole Commission*, 594 F.2d 170, 173 (7th Cir. 1979) *citing Geraghty v. United States Parole Commission*, 440 U.S. 945, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979); Davis, *Administrative Law of the Seventies*, § 5.03 at 147 (1976).

The 1968 regulations governing disability determinations were less extensive than the 1978 regulations. 33 F.R. 11749 (No. 162, Tues. Aug. 20, 1968). In 1968, the last two steps in the sequential process were listed together:

(b) Conditions which constitute neither a listed impairment or the medical equivalent thereof likewise may be found disabling if they do, in fact, prevent the individual from engaging in any substantial gainful activity. Such an individual, however, shall be determined to be under a disability only if his physical or mental impairment or impairments are the primary reason for his inability to engage in substantial gainful activity. In any such case it may be established that his physical or mental impairment or impairments are of such severity, i. e. result in such lack of ability to perform significant functions as moving about, holding objects, hearing, speaking, reasoning, and understanding, that he is not only unable to do his previous work or work commensurate with his previous work in amount of earnings and utilization of capacities but cannot, considering his age, educa-

tion, and work experience engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

*Id.* at 11750.

■ The 1978 regulations expanded the sequential process to be followed and specified how each step in the disability evaluation invokes a different legal standard:[2]

In determining whether an individual is disabled, a sequential evaluation process shall be followed, whereby current work activity, severity of the impairment(s), and vocational factors are assessed in that order. The following evaluation steps shall be followed in the sequence shown, but when a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step shall be unnecessary.

20 C.F.R. § 404.1504(a).

For example, where the impairment is not severe, medical considerations alone can justify a finding that an individual is not under a disability. 20 C.F.R. § 404.-1504(a)(1). "A medically determinable impairment is not severe if it does not significantly limit an individual's physical or mental capacity to perform basic work-related functions." *Id.* On the other hand, before medical considerations alone will justify a positive finding of present disability, the impairment must fall under the listing of impairments in Appendix 1 or the ALJ must find the claimant's impairment to be the equivalent of a listed impairment. 20 C.F.R. § 404.1504(a)(2). In such cases, the ALJ need not go on to consider vocational factors. 20 C.F.R. § 404.1503(d).

However, even if the individual has a severe impairment, the ALJ may still find the claimant is not disabled if that impair-ment does not prevent performance of "past relevant work" 20 C.F.R. § 404.-1503(e) or "vocationally relevant past work", 20 C.F.R. § 404.1505(2)(b). This step in the evaluation process requires the ALJ to consider the claimant's residual functional capacity as it relates to the physical and mental demands of previous jobs. *Id.* In the case at bar, the ALJ's factual findings and the legal standards applied to those facts are not clear from the records. I cannot therefore determine that the ALJ's findings are supported by substantial evidence.

SEVERITY OF THE IMPAIRMENT

The claimant is not engaged in any current work activity. The ALJ does not state whether his ultimate conclusion of a lack of disability was based on a finding that the claimant has no severe impairment or on the fact that the claimant has a severe disability but is nonetheless capable of performing past relevant work. The ALJ states only that "the claimant is afflicted with moderate degenerative osteoarthritis of the spine" and pain which is not "intractable incapacitating pain." (R. 13). The ALJ goes on to find that "[t]he claimant's arthritic impairment does not prevent him from performing light work not involving frequent bending and stooping, such as his former jobs as a lead man and supervisor, general maintenance repairman or service station manager." (R. 13).

Moreover, there is no substantial evidence to support a finding that the claimant has no severe impairment. The Code of Federal Regulations states:

(C) *Does the individual have any severe impairment?*

Where an individual does not have any impairment(s) which significantly limits his or her physical or mental capacity to perform basic work-related functions, a finding shall be made that he or she does not have a severe impairment and there-

---

**2.** Not only legal standards will vary within this sequential evaluation. The courts have also shifted the burden of going forward with evidence at one step in the disability evaluation. While the claimant bears the burden of persua-sion, the burden of going forward with evidence of other substantial gainful activity which the claimant can perform shifts to the Secretary once the claimant makes out a *prima facie* case of disability. *See infra*, p. 13–14.

fore is not under a disability without consideration of the vocational factors. 20 C.F.R. § 404.1503(c).

In the instant case, the ALJ made no specific findings as to the severity of the claimant's arthritic impairment. The ALJ did not specifically indicate whether or not the claimant's osteoarthritis fell within Appendix 1's listing of impairments or its equivalent. 20 C.F.R. ch. III Subpart P. App. 1. The ALJ states "[t]he evidence shows that the claimant is afflicted with moderate degenerative osteoarthritis of the spine." (Tr. 13) In his summary and evaluation of the evidence, the ALJ does indicate the claimant has not been found to suffer from spinal stenosis, a listed disability. 20 C.F.R. Subpart P, App. 1, § 1.05 C. Apparently, the ALJ found the claimant's range of motion too flexible to fall within the listed impairments. A specific finding on such matters would greatly enhance the review process since the court must be able to determine from the record what the ALJ's findings are before applying the substantial evidence standard.

While the ALJ does not specifically find the claimant to be severely impaired, the ALJ did consider the claimant's residual functional capacity and his ability to perform past relevant work. This evaluation need not have been undertaken had the ALJ determined the claimant was not severely impaired. Thus, the ALJ apparently found the claimant severely impaired—in spite of the reference to "*moderate* degenerative osteoarthritis" (R. 13) (emphasis added). This inference is further bolstered by the fact that the ALJ mentions in the hearing that the claimant's impairment does prevent him from performing his most recent and usual work as a mechanic. (R. 69).

Apparently, the ALJ neither found this impairment to be listed in Appendix 1 (or to

be an equivalent) since additional factors were evaluated, i. e. residual functional capacity and ability to perform past relevant work, considerations which are unnecessary if the impairment is listed and of the proper duration. 20 C.F.R. § 404.1503(d).

 Whichever was the basis for the ALJ's decision to deny the claimant disability benefits, the record lacks substantial evidence to support the decision. The evidence clearly indicates that the claimant suffers a severe impairment which prevents the claimant from performing his previous job as a mechanic. In fact, the administrative law judge admitted at the hearing that "I know that [mechanic's work] is out." (R. 69). However, there is less evidence supporting the ALJ's determination that the claimant's impairment was not so severe as to prevent him from meeting the physical and mental demands of past relevant work.

## BURDEN OF PROOF

The claimant's newly-acquired counsel contends that since the claimant has proved that he is unable to perform his most recent occupation as a mechanic he has met his burden of proof by creating a *prima facie* case of disability.[3] The burden, the argument continues, therefore shifts to the government to produce evidence that the claimant can perform other work and the government has not met that burden.

The statutory authority defining a disability states only that:

(A) an individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

**3.** The Social Security Act's initial definition of disability required the claimant to prove an inability to engage in *any* substantial activity. The term "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be ex-

pected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. 42 U.S.C. § 423(c)(2) (1956).

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

42 U.S.C. 423(d)(2)(A)

The parties agree, and other courts have indicated that the burden of going forward with evidence to show other substantial gainful employment which the claimant can perform shifts to the Secretary once medical evidence establishes that the claimant is unable to perform his previous work. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980); *Woodard v. Secretary of HEW*, 626 F.2d 46, 47 (1980) 8th Cir.; *Strickland v. Harris*, 615 F.2d 1103, 1109 (5th Cir. 1980); *Wyatt v. Weinberger*, 519 F.2d 1285, 1287 (4th Cir. 1975); *Taylor v. Weinberger*, 512 F.2d 664, 669 (4th Cir. 1975); *Hernandez v. Weinberger*, 493 F.2d 1120, 1122 (1st Cir. 1974); *Phillips v. Harris*, 488 F.Supp. 1161, 1166 (W.D.Va.1980); *Magee v. Califano*, 494 F.Supp. 162 (W.D.N.Y.1980); D.Resp.Br. at 1, 2; Pl.Br. at 3. *See also Livingston v. Califano*, 614 F.2d 342, 345 (3rd Cir. 1980) ("Whether or not the burden actually shifts to the Secretary once the claimant has met his burden, there is no doubt that the Secretary must establish that the claimant has the ability to engage in alternative substantial gainful activity.)

A dispute still exists as to when the burden of going forward with the evidence shifts to the Secretary. The dispute centers around the meaning of the claimant's "previous work." The claimant contends that a claimant makes out a *prima facie* case of disability by proving that he can no longer perform his most recent occupation. The government urges, on the other hand, that before the burden shifts to the Secretary, a claimant must prove that he can no longer

perform any of his former jobs, not just his most recent occupation.

The meaning of the term "previous work" is a source of constant litigation. Generally, the reported decisions do not specify that the claimant has the burden of introducing evidence indicating that he cannot perform *all* of his prior occupations. Most courts simply find that the claimant is or is not disabled because he can or cannot return to his "previous job", "former job", "regular job", "usual job" or "last substantial job."

The Seventh Circuit Court of Appeals in one of its most recent decisions seems to indicate in dicta that the claimant must prove an inability to return to any of his former occupations before the burden of going forward with the evidence will shift to the Secretary. In *McNeil v. Califano*, 614 F.2d 142 (7th Cir. 1980), the court observed:

▓ The law is clearly established that a claimant under the Social Security Act has the burden of proving the existence of a disability. It is equally clear, however, that once the claimant demonstrates an impairment of sufficient severity so as to preclude the kind of work in *which she was previously engaged*, the burden shifts to the Secretary to prove that there is available some other kind of "substantial gainful employment" which the claimant is able to perform. *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 861 (7th Cir. 1978); *Stark v. Weinberger*, 497 F.2d 1092, 1097–98 (7th Cir. 1974).

*The administrative law judge in this case did not make specific findings regarding the claimant's ability to perform the jobs of seamstress or visual records inspector which she had previously performed.* Specific reference is made in the administrative law judge's decision, however, to the testimony of the vocational expert that, without reference to pain, an individual who suffered from the limitations complained of by the claimant would be unable to perform any of the jobs previously performed by the claim-

ant. Apparently as a result of this testimony, *the Secretary has conceded that the claimant is disabled to the point that she is unable to return to her former occupations.*

614 F.2d at 145 (emphasis added).[4]

In the new federal regulations governing disability determinations, regulations which the Seventh Circuit has yet to consider on this issue, the phrase "previous work" has been replaced by "vocationally relevant past work" or "usual work". 20 C.F.R. § 404.1505(f) The claimant must now prove that he is unable to perform not just his most recent work, but also any work which remains "vocationally relevant." "If the claimant's residual capacity is sufficient to enable him to do his previous work (i. e. usual work or other vocationally relevant past work) he is not under a disability." Unempl.Ins.Rep. par. 12,429 (CCH)

The "vocational relevance" of work is defined under the regulation entitled "Work experience as a vocational factor." "Work performed 15 years or more prior to the point at which the claim is being considered for adjudication (or when the earnings requirement was last met) is ordinarily not considered vocationally relevant." *Id.* at § 404.1508. Although this regulation governs a later step in the disability determination process, the step which places the burden on the Secretary to bring forward the evidence of the claimant's ability to perform other jobs in the economy, the 15 year limit on vocationally relevant work must be read to apply also to the disability determination when assessing the claimant's ability to perform "previous work". Whether the claimant's former work as a

lead man and supervisor falls within this 15 year period of relevancy is not clear from the record. (*See* discrepancy, *supra*, at note 1, p. 2)

The ALJ went on to consider the claimant's residual functional capacity for performing his previous work: "The claimant's arthritic impairment does not prevent him from performing light work not involving frequent bending and stooping, such as his former jobs as a lead man and supervisor, general maintenance repairman or service station manager." (R. 13) To sustain such a finding, the ALJ must evaluate the claimant's residual functional capacity and the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1503(e).

The claimant's residual functional capacity is determined from the medical findings and is based on the nature and sufficiency of signs, symptoms, and the laboratory findings reported. The type and severity of impairment which the claimant suffers determine the individual's work limitations and residual functional capacity. 20 C.F.R. § 404.1505(a). Where the medical information alone does not permit an adequate assessment of residual functional capacity other factors may be considered in addition, e. g. the claimant's description of his impairment, recorded observations of the individual, and any other evidence of record. *Id.* Assessments describing a claimant's ability to sustain work-related activities in terms of an ordinary work day on a continuous basis are to be matched to the mental and physical demands of previous work, and later, if necessary, to other work in the national economy. *Id. See also* 43 Fed.

---

4. Earlier Seventh Circuit decisions, have not resolved this issue. In *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir. 1974) the court merely stated that before the burden of going forward with the evidence shifts, the claimant "must demonstrate that his impairment is so severe that he is no longer able to perform the kind of work in which he has been engaged." *Id.* at 1098. Since the claimant in that case had performed only one job, that of assembly line riveter, prior to the onset of her disability, the court did not need to consider specifically whether the claimant must prove she is incapable of performing all prior occupations before

shifting the burden of going forward with the evidence to the plaintiff.

In another Seventh Circuit case, the "previous employment" standard was interpreted in yet another manner. The claimant's work history included several jobs: in a grocery, on an assembly line, with the highway department, odd jobs as a bartender, and a brief period as a fruit picker. *Bledsoe v. Richardson*, 469 F.2d 1288 (7th Cir. 1972). In this instance, the court found the claimant was not disabled because he could perform his "last substantial employment" that of bartender.

Reg. 9299. In this case the ALJ based his residual functional capacity determination on doctors and administrative reports, the claimant's testimony, and personal observation.

## TREATING PHYSICIAN'S OPINION

 The claimant asserts that the ALJ failed to give the treating physician's opinion on the claimant's disability and residual functional capacity sufficient weight. Where two or more experts disagree in their opinions of the claimant's disability, "it is normally for the Secretary, and not the courts to resolve those conflicts." *Allen v. Weinberger*, 552 F.2d 781, 787 (7th Cir. 1977). However, when one physician has had a superior opportunity to observe the claimant, that physician's opinion may be entitled to greater weight than that of another who lacked that opportunity. *Id.* The Social Security Administration's regulations state only that "[t]he weight to be given . . . [a] physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments." 20 C.F.R. § 404.1526.

In this case, the claimant was examined personally by four doctors, while his Social Security file was examined by two additional doctors employed by the Social Security Administration. It is unclear from the record just how many times Dr. Mundt, the treating physician, examined the claimant. Clearly, Dr. Mundt examined the claimant at least two times, on February 20, 1979 and on June 4, 1979. The record also includes Dr. Mundt's written statement of October 24, 1979, which asserts the claimant's continuing disability (R. 132), suggesting the occurrence of another examination. Whether the claimant was examined on that date is not specifically stated however. One telephone transcript of June 21, 1979 was also admitted into the record. The conversation simply reiterates the doctor's position that the claimant is disabled.

The ALJ rejected Dr. Mundt's opinion of disability as unpersuasive "since his reports have been essentially negative and merely indicate that the claimant could not perform heavy work, such as his last job as a truck mechanic." (R. 6). "Essentially negative reports" is a nebulous categorization. Perhaps the ALJ was referring to the apparent failure of Dr. Mundt to perform clinical tests or to x-ray the claimant. Dr. Mundt's reports, however, consistently offer the opinion that the claimant is disabled, which is contrary to the Secretary's conclusion.

 While the ultimate conclusion on the claimant's disability rests with the Secretary, the opinion of a treating physician is entitled to great weight, certainly greater weight than the opinion of a doctor who examined the claimant only once. *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir. 1980); *Allen v. Weinberger*, 552 F.2d 781, 785–86 (7th Cir. 1977); *Atkins v. Califano*, 446 F.Supp. 1017, 1020–21 (N.D.Ill.1978); *Dunbar v. Califano*, 454 F.Supp. 1261, 1266 (W.D.N.Y.1978). The treating physician's opinion in this matter is certainly entitled to consideration as an indication of how severe the patient's impairment was at the time of the examination. *Allen v. Weinberger*, 552 F.2d 781, 785 (7th Cir. 1977), *citing Hall v. Celebrezze*, 314 F.2d 686 (6th Cir. 1963); *Massey v. Celebrezze*, 241 F.Supp. 59 (E.D.Ky.1963).

Dr. Mundt found the claimant to be severely impaired, but he does indicate that the claimant is capable of lifting up to 10 pounds and walking or standing 6 to 8 hours but not without much pain. Yet Dr. Mundt did not conduct extensive tests on the claimant; he relied upon Dr. Nauman's findings on all points but the ability to work. The weight to be given Dr. Mundt's opinion is affected by Dr. Mundt's apparent failure to examine the claimant extensively, to record his findings, and his referral of the claimant to an orthopedic specialist. Still, the fact that Dr. Mundt examined the claimant on numerous occasions lends credibility to Mundt's findings of pain and disability.

The court does not perceive great disparity among the doctors' opinions. Dr. Mundt

found the claimant capable of lifting up to 10 pounds and walking or standing 6–8 hours. Dr. Mundt does feel, however, the claimant is disabled from performing all work because of the pain he suffers while walking or standing. Dr. Nauman and Dr. Sukkar have also examined the plaintiff and have found the claimant to be capable of performing light work, lifting 20 pounds, standing or walking 6–8 hours. Dr. Nauman specifically found the claimant incapable of performing his former heavy work. These two doctors have performed more detailed examinations of the claimant than has Dr. Mundt. Dr. Nauman, the specialist to whom the claimant was referred by Dr. Mundt, examined the claimant and reviewed x-rays which revealed "horrible degenerative changes." (R. 118) Dr. Sukkar, the orthopedic specialist to whom the Social Security Administration referred the claimant, examined the claimant and took and reviewed spine x-rays. The x-rays apparently revealed "advanced degenerative osteoarthritis", (R. 123), although the x-ray impressions refer to "moderate degenerative changes", (R. 124), and "moderate spur formation", (R. 126). Neither Nauman or Sukkar specifically comment on the credibility of the claimant's subjective complaints of pain.

■ Dr. "Dirkenmanp" [sic], the Social Security Administration's doctor, submitted an illegible report purporting to interpret the medical information which was on file.

(R. 120). This medical advisor also found the claimant capable of performing light but limited work. The comment on limitation is illegible. *Id.* Still, the examining and treating physicians' opinions are undisputedly entitled to greater weight than an opinion derived solely from an examination of the record. *Allen v. Weinberger,* 552 F.2d 781, 786 (7th Cir. 1977). However, since Dr. Mundt's opinion is not supported by objective clinical findings and is not consistent with the evidence of severity, the ALJ's decision to reject Dr. Mundt's opinion is supported by substantial evidence. 20 C.F.R. § 404.1526 In fact, Dr. Mundt's opinion that the claimant is able to lift only 10 pounds is not consistent with the claimant's own testimony that he could lift 15–20 pounds, (R. 43), or with the opinions of doctors who are specialists in orthopedics.[5]

## SUBJECTIVE PAIN

■ More significantly, the differences in the physicians' opinions in this case are not marked differences, with the exception of Dr. Mundt's opinion on the severity of the claimant's pain and disability. Dr. Mundt's opinion that the claimant is capable of lifting up to 10 pounds and standing or sitting 6–8 hours a day would indicate the claimant's ability to perform sedentary work. *See Dictionary of Occupational Titles,* Vol. II, Occupational Classification, (3d ed. 1965 U.S. Dept. of Labor). But Dr. Mundt apparently placed greater weight on

---

**5.** In the hearing transcription, the claimant has made a specific offer to obtain the evaluation of Dr. Jones, a physician at the V.A. Hospital in Danville, Illinois. The SSA apparently referred the claimant to Dr. Jones for an evaluation, i. e. x-rays and a physical (R. 65).

The regulations do place the burden of furnishing medical and other evidence of disability on the claimant. 20 C.F.R. § 404.1530. Yet, to reiterate, there is a duty placed upon the presiding officer to "inquire fully into the matters at issue and ... [t]o receive in evidence the testimony of witnesses and documents which are relevant and material in such matters." 20 C.F.R. § 404.927 (1979). Some administrative law judges and courts have interpreted this duty as requiring the ALJ to secure records from a doctor which the claimant has either failed to or been unable to provide. *Stark v. Weinberger,* 497 F.2d 1092, 1097 (7th Cir. 1974)

(where the ALJ made an unsuccessful attempt to locate doctor's records.); *Diabo v. Secretary of HEW,* 627 F.2d 278, 282 (D.C.1980) (where the case was remanded due to the ALJ's failure to obtain additional doctor's records); *Dunbar v. Califano,* 454 F.Supp. 1261 (W.D.N.Y.1978) (where medicaid refused to release the claimant's medical information to him and the ALJ could have subpoenaed the information, the appellate court reversed the adverse finding). In the case at hand, the ALJ would have had no problem obtaining the evaluation of one of the government's own doctors. Indeed, this should have been done. If nothing more the uncounseled claimant should have been encouraged to produce that doctor's testimony. *Smith v. HEW,* 587 F.2d 857, 860 (7th Cir. 1978). This was not done in the hearing. On remand, this doctor's testimony should be elicited.

the claimant's subjective assertions of pain than did the other doctors. If the claimant's complaints of pain are real, then his ability to perform work at any level may be questionable. *Garcia v. Califano,* 463 F.Supp. 1098, 1103 (D.C.Ill.1979) *citing Talifero v. Califano,* 426 F.Supp. 1380, 1389 (W.C.Mo.1977); *Wilson v. Weinberger,* 398 F.Supp. 1071 (E.D.Pa.1975). In fact, evidence of pain alone may be sufficient to prove a disability. *Garcia v. Califano,* 463 F.Supp. 1098, 1103 (D.C.Ill.1979), *citing Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). *See Noe v. Weinberger,* 512 F.2d 588, 595 (6th Cir. 1975). Subjective evidence of pain is therefore entitled to serious consideration in the evaluation of disability. *Atkins v. Califano,* 446 F.Supp. 1017, 1020 (N.D.Ill.), *cited in Garcia v. Califano, supra.*

■ In the instant case, contrary to the plaintiff's argument, the ALJ did not ignore the claimant's testimony of subjective pain and disability. The findings specifically state "[t]he claimant has some complaints of pain but the evidence as a whole, including medical findings, is not consistent with the existence of intractable, incapacitating pain." (R. 13). The ALJ further comments:

> "with regard to the claimant's allegations of severe pain that medication and moist heat alleviate his pain somewhat and allow him to walk about unassisted, care for his personal needs, occasionally shop and drive a distance of 22 miles. It is concluded that the claimant's arthritic pain is not so severe as to prevent him from performing his aforementioned former work." (R. 12).

Although the ALJ does not directly state that this finding relates to the claimant's credibility, there is no doubt that the ALJ finds that quality wanting. And while the treating physician's opinion on the claimant's pain is entitled to great weight, that opinion must still be supported by clinical findings and by other evidence. 20 C.F.R. § 404.1526. In this case there is no evidence other than the claimant's testimony and Dr.

Mundt's opinion on subjective pain. And this, while indicative of a certain degree of pain on the claimant's part, is not indicative of pain which alone is so severe as to disable the claimant from performing his former jobs. Therefore, there is substantial evidence to support the ALJ's findings on subjective pain.

## PAST RELEVANT WORK

■ The ALJ's determination that the claimant could perform his previous jobs as a lead man and supervisor, general maintenance repairman, or service station manager is not supported by substantial evidence. When determining whether the claimant has any impairment which prevents past relevant work, the ALJ must evaluate the claimant's residual functional capacity and the physical and mental demands of past relevant work. 20 C.F.R. § 404.1503.

The ALJ has evaluated the claimant's residual functional capacity, noting limitations in lifting, standing and sitting. Specifically, the ALJ found the claimant "capable of performing light work," a categorization which is not necessarily a sufficient description of residual functional capacity. There is a marked absence in the record on the claimant's range of motion. The only evidence on the record is Dr. Sukkar's telephone report in which he admits that he failed to measure the claimant's spinal range of motion but that he "recalled" a 80% limitation of motion in all directions. (R. 131). Further, the ALJ made no reference to the degenerative nature of the claimant's disease and any potential harm which could occur if the claimant is forced to continue at his former jobs. Without such necessary evidence, the ALJ is unable to make à disability determination which is supported by substantial evidence. *Epps v. Harris,* 624 F.2d 1267, 1274 (5th Cir. 1980).

■ Such is also the case with the ALJ's determination that the claimant was not disabled from performing his former jobs. A description of the activities involved in the jobs of lead man and supervisor, general maintenance repairman, or ser-

vice station manager is necessary for an evaluation of the physical and mental demands of past relevant work. In light of the evidence that tends to establish the claimant's inability to perform his former jobs, the ALJ must determine precisely the activities involved in his former work and the activities the claimant is capable of performing. *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Parker v. Harris*, 626 F.2d 225, 223 (2d Cir. 1980). It is not sufficient for the ALJ to assert that the claimant might do jobs of a light nature without including a description of the jobs, demonstrating that the job does not require significant stooping, lifting, and walking, activities which the ALJ found the claimant incapable of performing. *Bastien v. Califano*, 572 F.2d 908, 908 (2d Cir. 1978). (In *Bastien*, the ALJ found the claimant capable of performing his former job as a checker, a job which the claimant had described in some detail, but which still required a significant degree of physical effort. The court reversed the denial of disability benefits.)

The claimant described his former jobs. As lead man and supervisor his work consisted of loading and unloading reels of light cables and supervising others. (R. 38). As a general maintenance repairman, he performed light work, repairing and replacing parts. (R. 42–45). Lifting was limited to 20–25 pounds. As a gas station manager he pumped gas, greased automobiles, and did tune-ups and repairs (R. 45–57) which required 8 hours of standing and walking, with constant bending and frequent reaching. (R. 112).

Such descriptions do not provide substantial evidence to support the ALJ's decision that the claimant could return to his former jobs in light of the evidence that indicates that the claimant cannot lift more than 20 pounds and that he has restrictions of movement which clearly prevent him from performing mechanic's work. The ALJ himself finds the claimant capable of performing light work, a determination which "presupposes an ability to stand or walk at least 6 hours in an 8 hour day, lift and carry up to 10 pounds about ⅔rd of the work day,

and occasionally lift 20 pounds maximum." *Dictionary of Occupational Titles*, 1965, Vol. II, Occupational Classification, Third Ed., U.S. Dept. of Labor. In fact, although the ALJ states these jobs do not involve much bending or stooping (R. 13), there is nothing in the record which supports this finding. Common sense dictates a realization that many mechanics' jobs require a significant amount of bending and stooping. Moreover, the claimant specifies as much. (R. 112). The amount of standing, sitting, walking, lifting, bending, and stooping required, then, in these jobs must be considered. On remand, the specific demands of these jobs need to be further evaluated on the record. Additionally, the ALJ needs to determine whether these former jobs fall within the 15 year period of past relevant work which justifies the inference that the claimant retains the necessary skills to perform that work and that those skills are still vital to the job in issue. (In point of fact, the lead man and supervisor positions which the ALJ feels the claimant is capable of performing apparently are no longer in existence. (R. 80). That is not to say that unavailability of a job is grounds for a disability finding. 43 Fed.Reg. 9285–86).

VOCATIONAL EXPERT

Counsel for the claimant also contends that the ALJ erred as a matter of law by failing to shift the burden of going forward with the evidence to the Secretary and thereby failing to require the testimony of a vocational expert on the claimant's employability. Although the record is somewhat confusing, the ALJ never reached this step in his evaluation. He apparently decided the claimant's ability to perform his former jobs indicated the claimant had failed to create a prima facie case of disability. However, the ALJ's finding that the claimant was not disabled and was capable of performing his former jobs is not supported by substantial evidence.

If on remand the claimant creates a prima facie case of disability, the burden of going forward with the evidence will shift to the Secretary to prove other substantial

gainful activity which exists in the national economy and which the claimant is capable of performing. 43 Fed.Reg. 9297.

But even if on remand the burden shifts to the government, a vocational expert will not necessarily be required to testify to alternative employability at the hearing. The decision as to whether a vocational expert's testimony is needed remains in the discretion of the ALJ. 42 Fed.Reg. 9292. There is no doubt that while a vocational expert might be useful in determining whether a claimant is capable of performing past relevant work, the expert's testimony is not required. *Chism v. Secretary of HEW*, 457 F.Supp. 547, 559 (C.D. Calif.1978). And even on the issue of alternate employability, a vocational expert is not required where the record clearly reflects the claimant's ability to perform other work. *Id.* at 460; *but see Warner v. Califano*, 623 F.2d 531 (8th Cir. 1980); *Criswell v. Califano*, 498 F.Supp. 42 (W.D.Mo. 1980). Nonetheless, where the record is devoid of such information on the claimant's ability to perform other jobs which exist in the national economy, a vocational expert's testimony is advisable. *Orzel v. Finch*, 445 F.2d 150, 154 (7th Cir. 1971). The SSA handbook on the disability determination process itself states: "During the prehearing study of a disability case, including tentative selection of the proposed exhibits, the rehearing examiner should determine if vocational testimony appears desirable or even essential in order to reach a proper conclusion." *SSA Handbook*, Part 887(10) (Bureau of Hearings and Appeals 1967). On remand, if the ALJ fails to find substantial evidence that the claimant could perform any of his past relevant work and the burden therefore shifts to the Secretary, the ALJ must then decide whether a vocational expert's testimony is necessary to establish the claimant's ability to perform other work.

IT IS THEREFORE ORDERED that this case be, and hereby is, remanded to the Secretary for further development of the record and for the taking of additional evidence.