William C. EPPS, Plaintiff-Appellant,

v.

Patricia Roberts HARRIS, Secretary, Department of Health and Human Services, Defendant-Appellee.

No. 78-2621.

United States Court of Appeals, Fifth Circuit.

Aug. 25, 1980.

David W. Palmer, Crestview, Fla., for plaintiff-appellant.

Emory O. Williams, Jr., Thomas R. Santurri, Asst. U. S. Attys., Pensacola, Fla., for defendant-appellee.

Before JONES, GEE and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

Fifty-two-year-old William C. Epps has been diagnosed by several physicians as suffering from, among other ailments, diabetes myelitis, gout, osteoarthritis and degenerative disc disease of the lumbar and cervical spine, obesity, costochondritis (chest wall pain), and hypertension. After serving in the military for 22 years, working during his last ten years in the air force first as a mechanical engineer and then as a supervisor of mechanical operations and records clerk, Epps was retired on September 11, 1974, for medical disability.[1] On October 1, 1975, Epps expressed an intent to file a claim for disability benefits provided under Title II of the Social Security Act, 42 U.S.C. §§ 401–432 (1976) (hereinafter the Act), and on October 9, 1975, pursuant to 42 U.S.C. §§ 416(i), 423, he filed a formal application for disability insurance payments for a period beginning March 27, 1974, when he was 46. Epps claimed that he had been continually disabled from that date because of hypertension, degenerative arthritis, diabetes, and a variety of other illnesses.

The Social Security Administration ("SSA") determined that Epps satisfied the threshold work and age requirements of the

---

1. He receives a Veteran's Administration full disability pension and has waived his military pension.

Act[2] and, pursuant to standard procedures, *see id.* § 421, submitted the question of whether he was "disabled" within the meaning of the Act to the Florida Department of Health, Bureau of Disability Determination. The state agency ruled that Epps was not disabled, and the SSA therefore denied his claim for disability benefits. Upon Epps' request for reconsideration, the Department of Health, Education and Welfare adhered to the decision that Epps did not meet the Act's disability criterion and was not entitled to insurance payments and notified him of this determination on December 15, 1975.

Epps then requested a hearing before an administrative law judge and was accorded the hearing on May 11, 1976. The ALJ ruled on September 28, 1976, that Epps was not disabled. Epps introduced additional evidence[3] and requested review of the ALJ's decision by the HEW Appeals Council. *See* 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.940, 404.946 (1979) (authorizing review of hearings examiner's action). The Appeals Council, whose decision on a claim for Social Security disability payments is automatically adopted by the Secretary, affirmed the ALJ's rejection of Epps' claim on March 11, 1977. Having received the final administrative decision denying his disability eligibility, Epps had no recourse but to file suit, which he did on May 18, 1977, pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g). The district court upheld the Secretary's decision, and Epps now appeals that determination.

Our review is statutorily limited to determining whether substantial evidence[4] supports the Secretary's decision that Epps was not disabled. 42 U.S.C. § 405(g);[5] *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Goodley v. Harris*, 608 F.2d 234 (5th Cir. 1979); *Chaney v. Califano*, 588 F.2d 958, 959 (5th Cir. 1979); *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). Disability, as defined by the Act, is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423.

An individual is disabled under the Act

> only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A). The burden of proving a disability under the Act rests upon the claimant, *Fortenberry v. Harris*, 612 F.2d at

**2.** A claimant for disability insurance benefits must establish that he or she worked at least "one quarter of coverage" (*i. e.*, that he worked at least one quarter of a calendar year and earned a minimum of $250 in that quarter or earned a minimum of $10,000 in the year) for each year from 1951 through the year of disability if, like Epps, he or she was born before 1930. 42 U.S.C. § 423(c)(1)(A), § 414(a). He or she must also show that 20 quarters of coverage fell within the 40-quarter period immediately preceding the disability. *See* 42 U.S.C. § 423(c)(1)(B). The claimant must show that he or she has not yet attained the age of 65.

**3.** The SSA operates under an "open-file" rule whereby a claimant can submit additional evidence at every stage of the administrative re-

view process to support a favorable determination of his claim. *See* 20 C.F.R. §§ 404.901, 404.964 (1979).

**4.** Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

**5.** That section provides in relevant part that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

949; *Goodley v. Harris*, 608 F.2d at 236, who must establish that he suffers a " 'physical or mental impairment' . . . that results from anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

■ Our examination of the record has disclosed substantial evidence contained in reports submitted by numerous doctors that Epps' gout, diabetes, chest wall pain, hypertension, and pulmonary dysfunction were controlled or controllable by treatment and were not incapacitating illnesses. *See, e. g., Entrekin v. Weinberger*, 477 F.2d 561 (5th Cir. 1973) (diabetes is remediable condition not disabling under the Act); *Workman v. Celebrezze*, 360 F.2d 877 (7th Cir. 1966) (hypertension not disabling when controllable by diet). His claim of disability, therefore, is supportable only if his back condition prevented *him* from performing any substantial gainful activity.

■ In attempting to establish his disability and entitlement to Social Security payments, Epps introduced both subjective evidence of pain and ill health through his own testimony and objective clinical findings and diagnoses by examining physicians. *See DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972) (discussing elements of proof in disability determinations). He ap-

peared at the hearing before the ALJ wearing a cervical collar and back and leg braces and testified that his back condition began in 1960, when he was hit in his lower back by a crane. He also stated that in 1970 his upper cervical spine began to hurt him and that he had been hospitalized several times for his back problem between 1962 and 1968 but had not undergone back surgery. Epps complained that his back problem was so painful that he had difficulty moving and could not stoop, bend, or drive his car for more than 20 miles. The claimant disclosed that he used a home traction device on doctor's orders three or four times daily for relief of his back pain, spending his days primarily lying in traction since his retirement from the military. Epps also told the hearing examiner that he had a heart condition, high blood pressure (hypertension), severe headaches, diabetes, and gout and that he ingested 59 pills daily to treat his various ailments.

Epps' medical records reveal that, although some doctors found his back problems less severe than did others, between May 1974 and December 1976 he was consistently diagnosed as having osteoarthritis of the lumbosacral spine and degenerative joint disease limiting his range of motion and was reported to complain of intense pain.[6] Moreover, every physician who, in

---

6. VA orthopaedic surgeon Dr. Niemeyer found in June 1974 that Epps had, inter alia, osteoarthritis of the lumbosacral spine and degenerative joint disease, confirmed by x-rays and clinical examination. This condition caused, according to Dr. Niemeyer, intense back pain that was aggravated by walking, standing, or efforts to bend and also inflicted pain in Epps' neck, shoulders and chest. Dr. Niemeyer did not fully test Epps' movement capacity because the patient was experiencing marked pain. However, his limited investigation revealed that although Epps' gait was normal, and he displayed no muscle weakness, he could not extend his left leg to the right while sitting without discomfort.

VA treatment records of March 1975 note that Epps was diagnosed as having *severe* degenerative joint disease of the lumbosacral and cervical spine, which responded at that time to traction and administration of anti-inflammatory agents. In April and May 1975, Epps was hospitalized for his back problem, and this time

his condition did not respond to traction and moist heat treatment. A VA physical therapist treating Epps in May and June 1975 noted that his cervical movement was limited in all planes. In June 1975, Dr. Mezey of the VA Hospital observed in his clinical notes that Epps had suffered multiple episodes of severe cervical and lumbosacral pain requiring clinical and home treatment and disabling him from work.

Dr. Kerr, Epps' personal orthopaedic surgeon, reported in May 1975 that Epps had *significant* cervical and thoracolumbar pain, that his x-rays showed *marked* degenerative arthritis in his cervical and lumbar spine region and that Epp's range of cervical and thoracolumbar spine movement was only 50% of normal. In June 1975, Dr. Kerr hospitalized Epps because he had been unresponsive to outpatient back care, and in April the doctor found that Epps' degenerative arthritis continued to cause him extreme back pain and to limit his lumbar

addition to diagnosing Epps' physical condition, addressed the impact of his health on his work capabilities concluded that he was unable to perform gainful activity. Thus, in June 1974, VA orthopaedic surgeon Niemeyer found that Epps was "apparently unable to perform his afsc [duties] because of recurring, disabling pain" from his osteoarthritis and degenerative joint disease and recommended to the air force medical examination board that Epps be placed on a "disqualifying profile," making him eligible for disability retirement. Another VA physician noted in June 1975, after Epps' second hospitalization for his back problem, that the claimant was "totally disabled from doing any sort of activity without getting a painful exacerbation [of his back condition]." Epps' private orthopaedic surgeon, Dr. George Kerr, found that Epps' back condition severely limited his activity and that he saw "no indication that [suggested] ever placing Mr. Epps into a productive category for any type of occupation."

Finally, the record discloses that in August 1976, after the ALJ had issued his decision denying Epps' disability claim and while this case was pending before the HEW Appeals Council, an updated report on Epps' condition submitted to the SSA by Dr. Kerr informed the agency that the claimant had recently been admitted to General Hospital of Fort Walton Beach, Florida, for severe back pain and that x-rays of Epps' lumbar spine taken during the August hospitalization showed "advanced degenerative arthritic changes" with "considerable narrowing of the lumbosacral disc space" and "permanent anterior and lateral spur formation." While Epps was said to have a full range of motion for his upper and lower extremities, his cervical spine motion was recorded as approximately 30 percent of normal and was limited by "paracervical muscle spasms," and straight leg raising produced back pain at 30 degrees. Dr. Kerr's letter informed the agency that Epps had been transferred to the VA Hospital in Gainesville to complete treatment and medical evaluation as to the appropriateness of surgery. Further discussion of Epps' post-hearing condition was introduced in the record by another letter written by Dr. Kerr in December 1976, which stated that:

range of motion to 60% of normal and his cervical motion to 40% of normal.

Epps' condition was described as less serious by other physicians. Dr. Reifel, a VA internist who examined Epps in July 1975, also diagnosed the claimant as having degenerative arthritis of the cervical and lumbar spine but found that Epps had *moderate* tenderness in this area. However, the doctor also discovered that the space between Epps' second and third cervical discs had narrowed and that he had bone spurs throughout his lumbar region. Dr. Reifel further reported that Epps' range of motion was limited. X-rays of Epps' back taken in August 1975 and interpreted by Dr. Autry of the VA were said to reveal only *mild* degenerative changes and anterior osteophylic formation in the claimant's lumbosacral spine. Dr. Autry reported that Epps' vertebrae were in good alignment, and his intervertebral disc spaces were well preserved.

Similarly, Dr. Andre, who evaluated Epps in October 1975, reported that his patient complained of multiple joint and muscle pains that were caused by osteoarthritis or degenerative disc disease of the spine and neck but found that Epps was "able to walk and move about" although he experienced "some . . . restriction of his activities."

To supplement the above medical evidence, the ALJ ordered additional medical consultations that were conducted in June 1976. Consulting orthopaedic surgeon Newcomb reported that x-rays confirmed a diagnosis of arthritis but that the problem was not "massive" and that "the physical examination did not completely justify the severe multiple complaints of this man." Dr. Newcomb did not discuss whether Epps' condition disabled him from working. He did note, however, that Epps had only two-thirds of his normal cervical motion in tests of flexion and extension rotation and deviation and could bend forward only 45°. Dr. Newcomb also reported that Epps complained of back pain when his left leg was elevated or when he flexed his thighs by bending. The physician found that Epps had some "persuasive" numbness in his right foot but that other sensory changes in his lower extremities were "difficult to evaluate" because Epps' muscles would "twitch" when he was pricked in some of the places that he claimed were numb.

The second consulting physician, Dr. Previtt, also reported that Epps had degenerative spinal arthritis. He found that this condition restricted Epps' neck motion to two-thirds of its normal range and prevented Epps from extending his legs because of pain and stiffness.

Mr. Epps' physical condition limits his activity since he has a significant[ly] decrease[d] range of motion of the cervical and lumbar spine. He has essentially 30 percent normal range of motion of the cervical and thoracolumbar spine due to muscle spasms and significant tenderness over the paralumbar and cervical muscles limiting normal range of motion. . . . Mr. Epps' main disabling factors are continued disabling pain in the cervical and lumbosacral spine area with radiation of pain into the left upper extremities. He has been treated on a conservative approach by my office and the VA in Gainesville, Florida, with no improvement. He has modalities of physical therapy, including intermittent cervical and pelvic traction, moist heat to the cervical and lumbosacral spine area, isometric exercises, cervical collars, back support, whirlpool with no improvement. At the present time he has been seen at Eglin Air Force Base and has been referred to Kessler Air Force Base for evaluation by a neurosurgeon for possible anterior cervical fusion. The possibility of anterior cervical fusion increasing his productivity is none. At best, the anterior cervical fusion, if performed, will only decrease his pain so that he can live hopefully a normal life. At the present time, I see no indication that ever placing Mr. Epps into a productive category for any type of occupation. At the present time I would definitely classify him a total permanent disability category.

Mr. Epps also uses intermittent cervical traction at home two to three times per day for 10 to 20 minutes. He also applies heat and continues to use his cervical collar. The three above mentioned treatments have only limited his discomfort to a minimal nature.

In denying Epps' disability claim, the ALJ found, *inter alia*, that "the claimant suffers from cervical and lumbar arthritis with impairment of back motion . . . and some back discomfort." However, while the ALJ conceded that Epps suffered a medically determinable physical impairment that had some adverse impact on his ability to engage in gainful activity, he concluded that the claimant had not been "significantly prohibited by his arthritic problems" from performing "his regular work as a mechanical supervisor or records clerk where the claimant's back strain would be minimal."

The ALJ based this determination in part on the ground that "x-ray examination indicates that although the claimant may have some arthritic changes in the back which may result in some discomfort, there was no showing of severe deterioration or nerve root involvement." He also reasoned that Epps had not met his burden of proving disability because he

allege[d] back trouble since 1962 but he has not required any radical treatments such as cervical intervention. It was felt by the Veteran's Administration and Dr. Kerr that all the claimant needed was physical therapy to improve his back motion. While the claimant alleges severe back pain, the evidence fails to establish a severely incapacitating pain syndrome which has resulted in muscle atrophy, muscle weakness or loss of weight. Moreover, the evidence fails to establish that the claimant is severely limited by a musculoskeletal problem. Examinations consistently show that the claimant has full ability to use his upper and lower extremities without any loss of motion. Dr. Andre noted that the claimant had some mild reduction of his activities but was able to walk and move about. This was substantiated by subsequent examinations which showed that the claimant was able to ambulate in a normal manner. . . . [T]he claimant may have some back discomfort . . .. However, full consideration of the evidence including specific medical findings and the claimant's objective symptoms, dictates a finding that back pain or discomfort . . . is not of disabling proportions.

The rationale for the ALJ's determination was not expanded or revised by the Appeals Council. In affirming the hearing decision, the Appeals Council merely noted

that it had considered the additional evidence submitted by Epps and found the ALJ's decision to be "correct."

We recognize that the claimant bears a heavy burden in proving disability. Nevertheless, we cannot find that the record in this case contains substantial evidence supporting the Secretary's denial of Epps' disability eligibility. The ALJ predicated his finding that Epps' back problem did not result in disabling pain or other incapacitating restrictions in significant part on his understanding that Epps had not required radical treatment. Yet the Appeals Council adopted the hearing examiner's decision without addressing post-hearing evidence of disability submitted by Dr. Kerr that expressly stated that conservative treatment had failed and that Epps had recently been referred for consideration of the radical intervention believed by the ALJ to be an important indicator of disability. Moreover, Dr. Kerr informed the Appeals Council that Epps continued to suffer pain and limited range of motion, that the contemplated surgery would not increase his productivity, and that there was no possibility that Epps would ever be fit to work in any type of job. Although the Appeals Council acknowledged that Epps had submitted new evidence, it did not adequately evaluate it. Rather, it perfunctorily adhered to the decision of the hearing examiner. This failure alone makes us unable to hold that the Secretary's findings are supported by substantial evidence and requires us to remand this case for a determination of Epps' disability eligibility reached on the total record. *Mann v. Gardner*, 380 F.2d 182, 187 (5th Cir. 1967).

We also find that the decision of the Secretary was not supported by substantial evidence because she did not properly consider the disabling effect of the treatment regimen required by Epps' back injury. The claimant testified that to alleviate his back pain he underwent traction three or four times daily. Physicians' reports substantiate Epps' assertion that this traction treatment was medically prescribed. Since Epps' treatment program for his back condition would significantly interrupt a nor-

mal, eight-hour work day, it was incumbent upon the ALJ and the Secretary to ascertain whether Epps' need for frequent daily traction precluded him from engaging in gainful activity. *Harrell v. Harris*, 610 F.2d 355, 357–59 (5th Cir. 1980). *See Simmons v. Harris*, 602 F.2d 1233, 1236–37 (5th Cir. 1979) (reversing denial of disability benefits in light of testimony by vocational expert that if plaintiff had to rest beyond normal breaks, plaintiff could not perform jobs suggested as feasible for someone having mild to moderate impairments). Accordingly we remand this case to the Secretary for a full evaluation of the effect of Epps' treatment regimen on his ability to perform his former job or to pursue any other substantial gainful employment. *See Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979) (remanding for further consideration of relevant, probative evidence not explicitly weighed and considered by the Secretary when such consideration "was necessary to a just determination of claimant's application").

Finally, we cannot find substantial evidence in the record to support the Secretary's decision that Epps remained capable of performing his job as a military records clerk. Every physician who examined the claimant reported not only that he complained of continuous spinal discomfort and experienced increased back pain when his legs were placed in certain positions but also that his range of neck and back motion was significantly limited by stiffness and muscle spasms so that, although he could walk normally, he could not stoop or bend. The ALJ pointed to no evidence that Epps could function in any of his former occupations with these limitations on his motion. Rather, the hearing examiner found that Epps' pain was not disabling and, although he acknowledged that claimant's back motion was impaired, he simply asserted that Epps could perform his former work as a records clerk.

However, the only medical evidence in the record of Epps' ability to perform his former jobs is favorable to him. Dr. Nie-

meyer concluded that Epps' back condition rendered him unable to serve as a records clerk and recommended that he be categorized as disabled from performing that job by the VA. Dr. Kerr repeatedly reported that Epps was unable to work in any capacity, and Dr. Mezey noted that the claimant was "totally disabled from doing any sort of activity without getting a painful exacerbation [of his back condition]." In addition, the VA found that Epps was totally disabled and incapable of working as a records clerk. While the physicians' opinions and the VA's decision that Epps was disabled and could not perform his previous jobs are of course not binding on the Secretary,[7] they are evidence "entitled to great weight." *DePaepe v. Richardson*, 464 F.2d at 101 (noting significance of VA finding of disability); *see Goodley v. Harris*, 608 F.2d at 236–37 (observing that an ALJ may not arbitrarily ignore uncontroverted medical testimony and suggesting that where there is medical evidence of disability the government cannot deny disability benefits without some medical opinion that claimant is in fact capable of gainful employment).

 It is true that the "mere existence of pain is not an automatic ground for obtaining disability benefits" and that the "factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence." *Fortenberry v. Harris*, 612 F.2d at 950; *see Newborn v. Harris*, 602 F.2d 105, 107 (5th Cir. 1979). However, while the hearing examiner may have permissibly concluded that the claimant's *pain* was not of crippling degree, there is no evidence upon which the ALJ could have determined that Epps' *restricted motion* did not prevent him from working as a records clerk. No vocational expert testified that this position was so sedentary that it did not involve bending or stooping to retrieve material. In light of the evidence that did tend to establish that Epps could not function in his former occupation, it was necessary for the ALJ to determine precisely both the activities that he could perform and the activity involved in his former job in order to find that Epps remained able to work as a records clerk. *See DeMandre v. Weinberger*, 414 F.Supp. 784, 787 (E.D.La. 1976):

> It is not enough for the judge to point vaguely to a narrow area of possible employment and assert that such work is suitable as long as the claimant does not stand, bend, climb any stairs . . . . .
> It must be shown by competent medical testimony that the claimant is capable of performing the physical activities that the jobs available to him require. . .
> It is not necessary to have a degree in vocational counseling to observe that virtually any job, except one designed for a handicapped person, is likely to require . . . occasional bending . . . . .

The absence of a finding on Epps' range of motion and the movement requirements of his former job deprives the Secretary's decision of critical evidentiary support and, like the other lacunae in the record of this case, requires further investigation by the Secretary.

In remanding this case to the Secretary, we intimate no opinion as to whether Epps

---

7. *See* 20 C.F.R. § 404.1526 (1979), which provides in relevant part that:

 A statement by a physician that an individual is, or is not, "disabled," "permanently disabled," "totally disabled," "totally and permanently disabled," "unable to work," or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments.

 *See also id.* § 404.1525 (1979), which provides in relevant part that:

 The decision of any nongovernmental organization or other governmental agency that an individual is, or is not, disabled for purposes of any contract, schedule, regulation, or law shall not be determinative of the question of whether or not an individual is under a disability for the purposes of Title II of the Social Security Act.

can ultimately establish that he is disabled within the meaning of the Social Security Act. We have determined only that certain crucial issues were not adequately considered and that therefore the decision denying Epps' disability eligibility was not supported by substantial evidence. The purposes of the Social Security Act will best be served by further consideration of Epps' claims upon a more fully developed record.

REVERSED AND REMANDED.