[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11533
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 21, 2010
JOHN LEY
CLERK

D.C. Docket No. 6:08-cv-01751-JA-DAB

DEBBIE D. KELLY,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee,

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 21, 2010)

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Debbie D. Kelly appeals the district court's order affirming the Social

Security Commissioner's denial of her application for disability benefits and supplemental security benefits. After review, we affirm.

## I. BACKGROUND

**A. ALJ's Decision**

In December 2005, Kelly applied for disability and supplemental security benefits. Kelly alleged an inability to work as of December 31, 2003 due to high blood pressure, anemia, morbid obesity and gastroesophageal reflux disease (GERD"), which gave her chest pain and shortness of breath.

Following a hearing, an administrative law judge ("ALJ") concluded that Kelly was not disabled and denied Kelly's application. The ALJ determined, <u>inter alia</u>, that: (1) Kelly had a severe combination of impairments, namely atypical chest pain and a history of hypertension, that prevented her from performing her past relevant work, (2) but that she retained the residual functional capacity to perform a full range of sedentary work.

In so doing, the ALJ gave little weight to the opinion of one of Kelly's treating physicians, Dr. Michael Ham-Ying, who had written a January 9, 2006 letter about Kelly.[1] Dr. Ham-Ying's letter stated that: (1) it was being generated in

---

[1]The ALJ also partially discredited Kelly's testimony as to the intensity, persistence and effects of her impairments. We do not discuss this finding because Kelly does not challenge it on appeal.

response to Kelly's request "to have [a] statement outlining her ability to work"; (2) he had examined Kelly on that date; (3) Kelly's medical conditions have prevented her from working since October 2005; and (4) she was still unable to return to work. The letter indicated the duration as twelve months and listed Kelly's diagnoses as "Abnormal EKG, Hypertension, Morbid Obesity, Anemia, and GERD."[2]

With regard to Dr. Ham-Ying's letter the ALJ stated:

> The report was generated in response to the claimant's request to outline her ability to work.
> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and void unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. Additionally, the doctor's opinion is without substantial support from the evidence of record, which obviously renders it less persuasive.

In contrast, the ALJ gave considerable weight to the opinion of Dr. Alex Perdomo, a consulting physician who examined Kelly in March 2006. After examining Kelly and reviewing her medical history, Dr. Perdomo's report stated,

---

[2]This January 9, 2006 letter was the only evidence submitted to the ALJ from Dr. Ham-Ying.

3

inter alia, that: (1) although Kelly reported a history of chest pain, an EKG performed within the last month revealed no abnormalities[3] and that a coronary catheterization performed in 2002 reported as normal; (2) Kelly's chief complaint appeared to be bilateral knee pain from advanced osteoarthritis for which she underwent arthroscopic surgery in 2002; (3) Perdomo observed tenderness and pain during the examination of Kelly's knees, with the pain more severe in her left knee; (4) Kelly was unable to squat due to complaints of knee pain; (5) Kelly had full range of motion of her upper and lower extremities, but "painful bilateral knee flexion seen"; (6) an x-ray of Kelly's left knee showed a "slight narrowing of the interarticular space with medial and lateral osteophytes consistent with mild osteoarthritis"; (7) Perdomo's impressions were that Kelly suffered from osteoarthritis of the knees, allergies, obesity and atypical chest pains and, by history, chronic bronchitis, hypertension and GERD; and (8) Kelly could stand and walk for six hours of an eight hour workday with normal breaks, could sit for eight hours of an eight hour workday with normal breaks, could frequently lift and carry, but should limit lifting to no more than 30 pounds to minimize further knee

---

[3]An April 2006 report from the Orlando Heart Center indicates that Dr. Ham-Ying referred Kelly for consultation because she was experiencing chest pain. The report indicated that Dr. Ham-Ying had performed an EKG on February 28, 2006, which was normal, concluded that Kelly's chest pain was "most likely muculoskeletal in origin," and stated that Kelly "may follow[-up] with Dr. Ham[-]Ying to pursue sleep study."

injury and should avoid squatting, kneeling and repetitive stair climbing. In according Dr. Perdomo's opinion considerable weight, the ALJ noted "the lack of significant findings" by Dr. Perdomo during his physical examination.

**B.     Appeals Council's Decision**

Kelly requested review by the Appeals Council. Kelly argued, inter alia, that the ALJ applied the wrong legal standard in according weight to the opinions of Drs. Ham-Ying and Perdomo, failed to evaluate the effect of Kelly's obesity on her ability to work, and failed to properly consider and make findings regarding the side effects of her medications. The Appeals Council granted Kelly's request, noting that the ALJ had not adequately considered Kelly's obesity, and gave Kelly time to submit additional evidence.

Kelly submitted a questionnaire completed by Dr. Ahmed Masood, a pulmonologist who treated Kelly for shortness of breath and sleep apnea. Dr. Masood indicated that Kelly (1) was unable to sit upright in a chair for four or more hours in an eight-hour workday five days a week due to fatigue; (2) needed to lie down or recline most of the time due to fatigue; (3) suffered from extreme fatigue; and (4) was unable to perform any job eight hours per day five days per week on a reliable and sustained basis. Kelly also submitted pharmacy information sheets and excerpts from the 2008 Physicians Desk Reference for

Premarin, Lisinopril, Nexium, Zolpidem Tartrate and Zyrtec, which indicated, inter alia, that side effects for these medications included fatigue and somnolence.[4]

The Appeals Council issued an unfavorable decision adopting the ALJ's evidentiary facts and concluding that Kelly had the residual functional capacity to perform a full range of sedentary work. The Appeals Council determined that, in addition to atypical chest pain and history of hypertension identified by the ALJ, Kelly's severe impairments included obesity and degenerative joint disease. After reviewing the medical evidence related to Kelly's obesity and degenerative joint disease in her left knee, the Appeals Council concluded that, even with these additional impairments, Kelly was capable of a full range of sedentary work.

The Appeals Council also considered Kelly's claim that the ALJ did not properly consider the side effects of her medication. The Appeals Council acknowledged that Kelly testified at the hearing that her medications made her sleepy and required her to lie in bed most of the time. The Appeals Council noted, however, that no physician had found that side effects of Kelly's medication required her to lie down or sleep for prolonged periods. Thus, the Appeals Council concluded that the medical evidence did not support Kelly's "allegations

---

[4]Kelly contends that she also submitted letters from Dr. Ham-Ying and another treating physician, Dr. Billy Thompson, but these documents are not in the record.

that side effects of medication limits her to such a degree."

As for Kelly's new evidence, the Appeals Council found that the pharmacy information sheets indicated only the possible side effects, rather than actual side effects. The Appeals Council emphasized that a March 2008 medical report from Dr. Masood "rule[d] out a number of these side effects as current problems." According to the March 2008 report cited by the Appeals Council, Dr. Masood saw Kelly for a follow-up evaluation for "sleep disorders/disturbance." Dr. Masood noted that Kelly had poor sleep hygiene, nocturnal awakenings with trouble falling asleep and going back to sleep and daytime sleepiness. Dr. Masood discovered that Kelly had been given the wrong size mask for her BiPAP machine used to treat her sleep apnea and ordered the correct size mask. Dr. Masood also recommended Kelly continue her bronchodilator regimen, lose weight, not drive while sleepy, sleep on her side, avoid alcohol at bedtime and elevate the end of her bed. Although Dr. Masood listed all of Kelly's medications, he did not indicate that any of them caused or contributed to her sleepiness.

The Appeals Council concluded that the entire record did not support a finding that "the side effects of medication further reduce[d] [Kelly's] residual functional capacity from that found by the [ALJ]." The Appeals Council otherwise agreed with the ALJ's findings and determined that Kelly was not

7

disabled.

Kelly appealed to the district court, which adopted the magistrate judge's report and recommendation, and affirmed the Commissioner's decision. Kelly filed this appeal.

## II. DISCUSSION

### A. Legal Standard for Evaluating Doctors' Opinions

On appeal, Kelly argues that the ALJ did not apply the correct legal standards in giving little weight to the opinion of Dr. Ham-Ying, her treating physician, and giving considerable weight to the opinion of Dr. Perdomo, a one-time consulting physician.[5]

In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, the opinions of examining physicians are given more weight that non-examining physicians and the opinions of treating physicians are given more weight than

_____

[5]We review de novo the legal principles underlying the Commissioner's final decision, but review "the resulting decision only to determine whether it is supported by substantial evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id.

non-treating physicians.  See id. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).  A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is "disabled" or "unable to work," is not considered a medical opinion and is not given any special significance, even if offered by a treating source, but will be taken into consideration.  Id. §§ 404.1527(e), 416.927(e).

Further, a treating physician's opinion "must be given substantial or considerable weight unless good cause is shown to the contrary."  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to "give good reasons" for not giving weight to a treating physician's opinion).

9

**B.      ALJ's Evaluations**

Here, the ALJ applied the proper legal standards in assigning more weight to Dr. Perdomo's opinion than Dr. Ham-Ying's opinion.  Contrary to Kelly's claims, the ALJ was not required to give Dr. Ham-Ying's opinion substantial or controlling weight because he was Kelly's treating physician.  Given that Dr. Ham-Ying's letter merely listed Kelly's impairments and stated that she was unable to return to work, it arguably offered only a non-medical opinion on a matter reserved for the ALJ.  As such, the ALJ was permitted to consider Dr. Ham-Ying's letter, but not to give it any special significance.

Even assuming Dr. Ham-Ying's letter offered a medical opinion, the ALJ still had the discretion to give less weight to Dr. Ham-Ying's opinion if the ALJ found good cause and clearly explained his reasons for doing so.  This the ALJ did when he explained that Dr. Ham-Ying's opinion "depart[ed] substantially from the rest of the evidence of record" and was "without support from the other evidence of record."  Notably, Kelly does not argue that this reason for discounting Dr. Ham-Ying's opinion is not supported by substantial evidence.[6]

---

[6]We find no merit to Kelly's argument that the ALJ discounted Dr. Ham-Ying's opinion because the ALJ concluded that Dr. Ham-Ying was being sympathetic to a demanding patient to avoid doctor-patient tension.  Although the ALJ observed that pressure from or sympathy for a patient could lead a doctor to provide an opinion on a patient's ability to work, the ALJ acknowledged that it was "difficult to confirm the presence of such motives," and ultimately concluded that Dr. Ham-Ying's opinion was less persuasive because it lacked evidentiary support

10

While Dr. Perdomo was not one of Kelly's treating physicians, he was an examining physician and his report (in contrast to Dr. Ham-Ying's conclusory letter) provided detailed medical findings from his physical examination of Kelly. Although an ALJ generally gives a treating physician's opinion more weight than an examining physician's opinion, the ALJ is not required to do so, especially where, as here, the ALJ discounted the treating physician's opinion for good cause. See Sharfaz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (stating that the ALJ "may reject any medical opinion if the evidence supports a contrary finding"). In giving more weight to Dr. Perdomo's opinion, the ALJ stressed that it was supported by the lack of any significant medical findings during Dr. Perdomo's physical examination. Again, Kelly does not argue that this reason was not supported by substantial evidence.

Because the ALJ articulated good cause for discounting the treating physician's opinion, the ALJ did not err in giving more weight to the consulting, examining physician's opinion. We conclude the ALJ applied the proper legal standards in allocating weight to these two doctors' opinions.

## C.    New Evidence of Medication Side Effects

Kelly contends that, after granting her request for review, the Appeals

_____

and in fact was inconsistent with other evidence.

11

Council refused to consider, and improperly rejected, the pharmacy information sheets and excerpts of the 2008 Physicians Desk Reference she submitted as new evidence.[7]

If, in requesting review, the claimant submits new and material evidence, the Appeals Council shall consider it if it "relates to the period on or before" the ALJ's decision. 20 C.F.R. § 404.970(b). The Appeals Council considers the entire record (i.e., the old and the new evidence) and "will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id. When the Appeals Council grants review, the Appeals Council's decision is reviewable as the final decision of the Commissioner of the Social Security Administration. Sims v. Apfel, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).[8] When the Appeals Council does not adequately evaluate new evidence, but instead perfunctorily adheres to the ALJ's decision, the Commissioner's decision is not supported by substantial evidence

---

[7]On appeal, Kelly does not argue that the Appeals Council failed to consider or improperly rejected Dr. Masood's July 2008 questionnaire. N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 n.4 (11th Cir. 2008) (noting that "issues not raised on appeal are abandoned").

[8]Because the Appeals Council granted review and modified the ALJ's decision regarding the side effects of Kelly's medications, we review only the Appeals Council's decision on this issue and do not address Kelly's arguments as to the ALJ's evaluation of her side effects.

12

and requires remand.  Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980).[9]

The record belies Kelly's claim that the Appeals Council refused to consider her new evidence of medication side effects.  The Appeals Council explicitly addressed the pharmacy information sheets and Physician's Desk Reference excerpts, explaining that this evidence discussed possible side effects from Kelly's medications, but did not show that Kelly actually experienced those side effects.  The Appeals Council also pointed to Dr. Masood's March 3, 2008 medical report, which indicated that Kelly's sleep apnea caused her sleep problems and Dr. Masood did not suggest that her medications played a role.  After considering this new evidence along with the rest of the record, the Appeals Council concluded that the record in its entirety did not support Kelly's claim that the side effects of her medication "further reduced [her] residual functional capacity."

Furthermore, the Appeals Council's finding that any medication side effects did not reduce Kelly's residual functional capacity was supported by substantial evidence.  As the Appeals Council noted, none of the medical evidence suggested that Kelly's medications caused her to take prolonged, daily naps.  Kelly never reported, nor complained of, such a side effect to any physician or treating source.

---

[9]Decisions of the former Fifth Circuit on or before September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Although Kelly reported to doctors that she had problems sleeping at night and experienced drowsiness and fatigue during the day, she did not report sleeping for half of the day, as she testified at the hearing. Further, the medical records suggested that Kelly's daytime drowsiness and fatigue were attributable to Kelly's sleep apnea and poor sleep hygiene, rather than her medications.[10] Indeed, Dr. Masood's reports indicate that in 2007 Kelly's sleep-related symptoms improved after she began using a BiPAP machine and bronchodilator. Finally, no doctor placed limitations on Kelly's activities due to medication side effects or instructed her that medication side effects might restrict her activities.

### III. CONCLUSION

For these reasons, we conclude the Commissioner's decision denying Kelly disability and supplemental security benefits is supported by substantial evidence.

**AFFIRMED.**

---

[10]Dr. Masood's July 2008 questionnaire also indicates that Kelly's fatigue is due to her "sleep apnea/hypersomnia," and not due to her medications.