[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12193
Non-Argument Calendar

_____

D.C. Docket No. 4:17-cv-00318-VEH


ZELDA RENETTE HOLDER,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER,
Nancy A. Berryhill, Commissioner,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 1, 2019)

Before MARCUS, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Zelda Holder appeals the district court's order affirming the Commissioner's denial of her application for supplemental security income (SSI).  Holder argues that (1) the administrative law judge (ALJ) failed to adequately develop the record regarding the physical demands of her past work, (2) the ALJ's conclusion that she was capable of performing her past work was not supported by substantial evidence, and (3) the Appeals Council was required to provide a detailed discussion of the new evidence she submitted to it when it denied her request for review.  Finding no error, we affirm.

I.

To qualify for SSI, a claimant must prove that she is disabled.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam).  To determine whether the claimant has proved that she is disabled, the ALJ follows a five-step, sequential evaluation process.[1]  This appeal primarily concerns Step Four of the five-step evaluation, where an ALJ will conclude that a claimant is not disabled if she can still perform either the "actual . . . job duties of a particular past relevant

---

[1] The ALJ must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

2

job," or the "job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387 (January 1, 1982). To answer that question, the ALJ must first assess the claimant's "residual functional capacity," which the Social Security Administration defines as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ must then identify "the physical and mental demands" of the claimant's past work and see if those demands are compatible with her current abilities. 20 C.F.R. § 416.920(f).

Holder applied for SSI in October 2013. She was 41 years old on her alleged disability onset date. She has a GED and was previously employed as a laundry worker, housekeeper, fast food worker, and cashier. Holder claims that she is no longer able to work due to mental and physical impairments, including depression, anxiety, mood swings, mitral valve prolapse, ulcers, hip deterioration, and degenerative disc disease.

The Commissioner initially denied Holder's application. She then requested and received an in-person hearing with an ALJ. At the hearing, Holder testified that she could not get out of bed some days, that she could only stand for fifteen minutes at a time, and that even sitting was painful. A vocational expert then testified that Holder's past work was light, unskilled labor, and that a hypothetical claimant with Holder's ailments would be able to perform Holder's past work as a

3

housekeeper, as well as other jobs in the national economy such as assembler, wire worker, or hand packer.

The ALJ issued an unfavorable decision concluding that Holder was not disabled.  Specifically, the ALJ found that while Holder did suffer from impairments, she retained the capacity to perform her past work.  The ALJ first assessed Holder's current abilities and limitations.  As to Holder's physical condition, the ALJ found that she had "the residual functional capacity to perform light work," which can include walking, standing, and light lifting.[2]  The ALJ found that she was still able "to perform a wide range of household chores such as cooking, cleaning, and managing household finances."

Holder's ability to "perform the full range of light work," however, was subject to some "mild" limitations based on her mental condition.  The ALJ found that Holder could "carry out simple instructions but not detailed ones."  He advised that she should limit contact "with the public" and "avoid close coordinated work with others, excessive workloads, quick decision-making, rapid changes, and multiple demands."  That said, he determined that Holder could tolerate contact "with a few supportive coworkers" and "non-confrontational" feedback.  And

---

[2] The Agency defines "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

4

while Holder testified to "marked curtailment of even simple daily activities," the ALJ found that the evidence did not indicate "good cause for such isolation and inactivity, apart from the claimant's own preference."

The ALJ then determined that Holder's past occupations all constituted "light unskilled" work and did not otherwise involve any "activities precluded by [her] residual functional capacity." He therefore concluded that Holder did not qualify as disabled because she was "capable of performing past relevant work as a cleaner/housekeeper . . . laundry worker, fast food worker and cashier"—both as she "actually" used to do those jobs, and as those jobs were "generally performed" nationwide. In the alternative, the ALJ also found that Holder was not disabled because she could transition to other work available in the national economy.

Holder petitioned for review by the Appeals Council, attaching additional medical records to her request. On December 30, 2016, the Appeals Council denied Holder's request for review. The district court affirmed the Commissioner's decision, and this appeal followed.

## II.

We review *de novo* whether the Commissioner applied the correct legal standards, but we are limited to assessing whether the Commissioner's resulting decision is supported by substantial evidence. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1266–67 (11th Cir. 2015) (per curiam). Substantial evidence is "such

relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id.* (citation omitted).  It is more than a scintilla, but less than a

preponderance.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per

curiam).  Thus, if the Commissioner's "decision is supported by substantial

evidence, this Court must affirm, even if the proof preponderates against it."  *Id.*

Under this limited standard of review, we "may not decide the facts anew, reweigh

the evidence, or substitute our judgment" for that of the Commissioner.  *Winschel

v. Comm'r of Soc. Sec*., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

III.

Our discussion proceeds in three parts.  First, we explain that the ALJ

adequately developed a record of Holder's past work.  Next, we explain that

substantial evidence supported the ALJ's determination that Holder was still

capable of performing that past work.  Finally, we explain that the Appeals Council

was not required to provide a detailed discussion of Holder's additional evidence

when it denied her request for review.

A.

Holder first argues that the ALJ failed to adequately develop the record as to

the physical requirements of her past work.  "The ALJ has a basic duty to develop

a full and fair record."  *Henry*, 802 F.3d at 1267.  Where "there is no evidence of

the physical requirements and demands of the claimant's past work and no detailed

6

description of the required duties was solicited or proffered," the ALJ "cannot properly determine" the nature of the claimant's past work—and therefore cannot say whether the claimant is still able to perform that work given her current limitations. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). We have remanded for further inquiry, for instance, where the record contained "no evidence concerning whether [the claimant] used equipment, the size and weight of items she was required to use, whether she scrubbed floors or merely dusted, or whether she was required to move furniture" in her past work. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986) (per curiam).

Here, by contrast, there was ample evidence in the record about the demands of Holder's past work. First, Holder filled out a detailed "Work History Report" as part of her SSI application. For each of her former jobs, the form instructed her to answer the following questions: "Describe this job. What did you do all day?" "In this job, how many total hours each day did you: Walk? Stand? Sit? Climb? Stoop? Kneel? Crouch? Crawl? Handle, grab or grasp big objects? Reach?" "In this job, did you: Use machines, tools or equipment? Use technical knowledge or skills?" "Explain what you lifted, how far you carried it, and how often you did this." The form also asked Holder to indicate for each job the "heaviest weight lifted," as well as the weight most "frequently lifted . . . from 1/3 to 2/3 of the workday." Holder answered these questions thoroughly—indicating, for instance,

that she carried "5lb boxes of meat 20 feet . . . 3 or 4 times daily" as a fast food worker. She noted that in that same role, she spent a daily average of 3 ½ hours walking, 3 hours standing, 15 minutes climbing, 30 minutes stooping, 30 minutes kneeling, 30 minutes crouching, and 15 minutes reaching. She also recalled that she used to spend 4 ½ hours walking, 3 hours standing, and 30 minutes stooping while employed as a laundry worker.

Second, Holder testified at her hearing about some of her own past duties. For instance, she recounted that she "had to come out of laundry because it was too much bending." She described, similarly, that when she had to "bend over and start cleaning and mopping, it was the worst thing." She told the ALJ that she had been reprimanded at her job as a housekeeper because she "couldn't stand" and had to take breaks to sit down.

Finally, the ALJ asked the vocational expert to give "an assessment of [Holder's] past relevant work, in terms of physical demands and skill level." While the vocational expert did not explicitly describe the tasks of a laundry worker, fast food worker, cleaner, or cashier, she classified each of those occupations as "light, unskilled" labor and referred the ALJ to the listings for those jobs in the Department of Labor's "Dictionary of Occupational Titles" (DOT). *See* 20 C.F.R. § 416.960(b)(2) (stating that an ALJ may consult a "vocational expert" and the "Dictionary of Occupational Titles" at Step Four). The DOT contains

8

detailed descriptions of the duties and physical requirements associated with each occupation, as generally performed in the economy.

The Work History Report, the testimony of Holder and the vocational expert, and the DOT combine to paint a full picture of Holder's past relevant work—both as she performed it herself, and as it is generally performed. There was enough evidence in the record for the ALJ to compare Holder's current abilities to the physical demands of her previous employment. Accordingly, we conclude that the ALJ satisfied its duty to develop a full and fair record as to the requirements of Holder's past work.

B.

Having determined that the ALJ did not err in characterizing Holder's past work, we next must determine whether substantial evidence supported the ALJ's conclusion that she could still perform that work. After careful review, we conclude that it does.

First, substantial evidence supported the ALJ's conclusion that Holder's physical ailments would not prevent her from performing light work. As the ALJ emphasized, Holder's complaints of "back pain, neck pain and arthritis" resulted in "little to no evidence of functional loss." A half dozen medical examiners noted that Holder's musculoskeletal health was normal. They noted that she had "normal gait," "normal motor and strength," "normal range of motion," "no joint

9

deformities, muscle tenderness or significant decrease in range of motion," no back or neck spasms, and was "able to squat . . . stand on heels and toes . . . [and] get on and off the examination table." Although Holder complained of hip pain, a doctor who examined her found "[n]o acute injury, no significant degenerative disease," and "[n]o significant skeletal or joint abnormality" in her hip. Another doctor concluded that Holder "would have no limitation on sitting, standing, or walking" and could "lift light to medium weights appropriate for [her] age."

Similarly, although Holder frequently presented with abdominal pain, her stomach issues were "successfully treated with medications." Medical records show that in September 2013, Holder was diagnosed with gastric ulcers. Doctors determined that Holder was consuming too much "Goody's Powder," an over-the-counter aspirin, and advised her to take a medication called Prilosec instead. In December 2013, Holder's abdominal CT scans came back "normal" and "unremarkable," showing "[n]o acute abdominal process." She was discharged feeling "much better." That same month, another doctor noted that she had normal bowel sounds and no masses or tenderness in her abdomen. She presented with vomiting again in June 2014, received nausea medication, and was discharged the same day when the "nausea ha[d] resolved."

Second, medical records also support the ALJ's finding that Holder was not too mentally impaired to work. In December 2013, Holder received a

10

psychological evaluation.  The doctor noted that, although Holder reported childhood sexual trauma, the psychological ramifications were only "mild-to-moderate."  The doctor reported that Holder was "pleasant," "independent" in her daily activities, had a "good relationship" with her siblings, sons, and then-boyfriend, and had normal cognition, judgment, intelligence, and speech.  In January 2014, a state agency psychologist opined that Holder was "moderately limited" in her ability to get along with coworkers, but "could carry out simple instructions and sustain attention to routine and familiar tasks."  The psychologist added that Holder "would benefit from casual supervision," could tolerate "supportive and nonconfrontational" feedback, and "would benefit from regular rest breaks and a slowed pace but would still be able to maintain an acceptably consistent work pace."

In our view, Holder's medical records contain evidence that a reasonable person would accept as adequate to support the ALJ's conclusion that she was capable of performing light work with mild to moderate social limitations.  We therefore conclude that the ALJ's decision was supported by substantial evidence.

## C.

Finally, Holder argues that the Appeals Council failed to adequately consider the additional evidence she submitted along with her request for review.  We disagree.  As a general matter, a claimant is entitled to present evidence at each

stage of the administrative process.  *Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam).  But the Appeals Council "need only 'consider'" a claimant's additional evidence to meet its statutory obligations, and it "is not required to make specific findings of fact when it denies review."  *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (quoting 20 C.F.R. § 416.1470(b)).  Nor is the Appeals Council required "to give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision."  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).  If the Appeals Council "added the evidence to the record, stated that it considered the evidence, and denied review," it was not required to do more.  *Parks*, 783 F.3d at 852–53.

In its written denial of Holder's request for review, the Appeals Council made clear that it had added the additional evidence to the record.  It then informed her that it had "considered . . . the additional evidence listed," and nevertheless denied review.  As in *Parks* and *Mitchell*, "the Appeals Council expressly stated in its letter to [Holder] that it had considered [her] additional evidence, and we have no basis on this record to second-guess that assertion."  *Mitchell*, 771 F.3d at 783.  We therefore conclude that the Appeals Council satisfied its obligation to consider Holder's additional evidence.

Holder relies on three cases, none of which requires a different result.  We have already explained why "reliance on *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980), and *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984), is misplaced" in an appeal of this nature.  *Parks*, 785 F.3d at 853.  It is true that in both those cases, this Court remanded after determining that the Appeals Council did not "adequately evaluate" new evidence and had "perfunctorily adhered" to an ALJ's decision.  *Epps*, 624 F.2d at 1271; *Bowen*, 748 F.2d at 634.  But we have observed that *Epps* arose in a different procedural context—the affirmance of an ALJ's decision after a request for review had been granted—and thus "has little bearing on a denial of a request for review."  *Parks*, 783 F.3d at 853.  And *Bowen* merely stands for the proposition that the Appeals Council must "apply the correct legal standards in performing its duties."  *Id.*; *Mitchell*, 771 F.3d at 784.  Accordingly, "nothing in . . . *Epps* . . . or *Bowen* requires the Appeals Council to provide a detailed discussion of a claimant's new evidence when denying a request for review."  *Mitchell*, 771 F.3d at 784.  Lastly, Holder invokes *Washington v. Social Security Administration, Commissioner*, 806 F.3d 1317 (11th Cir. 2015).  But *Washington* held that the Appeals Council erred by openly "refusing to consider" the claimant's new, material, and chronologically relevant evidence.  *Id.* at 1320.  It is not a case about how much, if at all, the Appeals Council must explain its

13

reasoning when—as here—it *does* consider the evidence and nevertheless issues a denial.

Holder challenges only the failure of the Appeals Council to provide a detailed discussion of her new evidence, which the Appeals Council was not required to do.  She has not asked us to reverse the denial of review on the merits, so we need not examine the new evidence that she presented to the Appeals Council.  *Parks*, 783 F.3d at 853.

IV.

The judgment in favor of the Commissioner is **AFFIRMED.**