[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2011
JOHN LEY
CLERK

No. 11-11321
Non-Argument Calendar

_____

D.C. Docket No. 3:10-cv-00004-CDL

PERRY L. FLOWERS,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 30, 2011)

Before HULL, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Perry Flowers appeals the district court's order affirming the Social Security

Administration's ("SSA") denial of her application for disability insurance

benefits and supplemental security income, 42 U.S.C. §§ 405(g) and 1383(c)(3).

On appeal, Flowers argues that: (1) the Administrative Law Judge ("ALJ") did not properly weigh the various doctors' opinions and erred in evaluating her subjective complaints of pain; and (2) the Appeals Council erred when it failed to remand her case to the ALJ for consideration of her new evidence. After review, we affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

### A. First ALJ Hearing and Appeals Council Remand

In 2002, Flowers applied for benefits alleging that she was unable to work as of May 15, 2001 due to her lupus, rheumatoid arthritis and thyroid disease. Flowers claimed that her impairments made her tired, caused swelling, pain and numbness in her hands and feet and made it difficult for her to grasp and lift things. Flowers's application was denied initially and upon reconsideration.

After a September 2005 hearing, the ALJ issued a partially favorable decision, finding that Flowers was disabled as of May 11, 2005. In so doing, the ALJ gave "great weight" to the May 2005 opinion of Flowers's family physician, Dr. Paul Raber, as to Flowers's residual functional capacity ("RFC").[1] Dr. Raber

---

[1] Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a), 416.945(a). As to

opined that Flowers could lift less than ten pounds, could sit, stand and walk less than two hours in an eight-hour workday and needed to alternate between sitting and standing at will.

The Appeals Council vacated the ALJ's decision and remanded for further proceedings. Among other things, the Appeals Council concluded (1) that "neither the clinical findings contained in the treatment record nor treatment history since the alleged onset date appears to support the debilitating limitations proposed by Dr. Raber," and (2) that "Dr. Raber's notes do not provide detailed clinical findings; his progress notes during the relevant period generally include only a check mark [and] clinical finding of tenderness and spasm of the back." The Appeals Council remanded so that the ALJ, inter alia, could give further consideration to Dr. Raber's opinions; request additional evidence or clarification from Dr. Raber; obtain additional evidence of Flowers's impairments, including updated records from Flowers's rheumatologist and a consultative exam from either a rheumatologist or internist; obtain other evidence from a medical expert to

physical abilities, the RFC assesses the claimant's ability to do things like sit, stand, walk, lift, carry, push or pull. Id. §§ 404.1545(b), 416.945(b). The ALJ uses the RFC finding to determine whether the claimant can do her past relevant work or any other work. Id. §§ 404.1520(a)(4), 404.1545(a)(5), 416.920(a)(4), 416.945(a)(5).

clarify the nature and severity of Flowers's impairments; and to further consider Flowers's RFC.

**B.     Additional Evidence After Appeals Council Remand**

Upon remand, additional evidence was placed in the record, including, inter alia, (1) Dr. Raber's May 2005 "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)," which contained an RFC assessment; (2) Dr. Fritz Lubin's May 2008 examination report and questionnaires, which also contained an RFC assessment; and (3) 2008 medical records from Dr. Cynthia Lawrence-Elliott, Flowers's rheumatologist.

Specifically, in May 2005, Dr. Raber, Flowers's family physician, opined that Flowers could lift less than ten pounds occasionally, stand less than two hours in an eight-hour work day, would need to lie down every two to three hours at unpredictable intervals, could never twist, stoop, crouch or climb ladders and had unspecified limitations in reaching, handling, fingering, feeling and pushing/pulling. In June 2005, Dr. Raber further opined that Flowers was unable to lift, stoop, climb or use her fingers for fine manipulation.

In May 2008, Dr. Lubin, a consulting internist who examined Flowers, opined that Flowers could occasionally lift and carry ten pounds, sit for six hours in an eight-hour work day, stand for twenty minutes without interruption and for a

4

total of two hours in an eight-hour work day, walk for thirty minutes without interruption and for a total of one hour in a work day and occasionally finger and feel in both hands. Dr. Lubin further opined that Flowers could occasionally balance, stoop, kneel, crouch and climb stairs and ramps, but could never climb ladders or crawl.

Dr. Lawrence-Elliott, Flowers's rheumatologist, did not offer a medical opinion as to Flowers's RFC. However, in her 2008 treatment notes, Dr. Lawrence-Elliott indicated that Flowers should avoid activities that put excessive strain on her lower back, such as heavy lifting, bending at the waist or sitting for prolonged periods, and needed rest periods of between 45 and 60 minutes.

## C. Second ALJ Hearing

At a second hearing in January 2009, Flowers and a friend, Kimberly Stevens, testified about the affects of Flowers's impairments on her daily life. Flowers was experiencing a lot of pain and was becoming more immobile. Therefore, Dr. Raber referred her to Dr. Lawrence-Elliott, who prescribed medication for Flowers's thyroid problems, inflammation, pain and arthritis. According to Flowers: (1) the medications made her drowsy and lethargic, and she had to lie down several times a day; (2) even while on the medication, Flowers could not dress herself because she could not raise her arms or bend over; (3)

5

because of swelling in her hands and feet, Flowers sat in a recliner with her feet elevated several times a day; (4) Flowers could not lift more the five pounds and could sit or stand for only fifteen to twenty minutes at a time.

Flowers's friend, Stevens, testified that: (1) Flowers was often tired and could not stand for long periods of time; (2) Flowers's strength had deteriorated to the point that she needed help getting out of bed; (3) Stevens helped Flowers finish chores and went grocery shopping for Flowers because Flowers was not able to move or lift and carry most objects.

Dr. Lina Caldwell, a consulting internist who reviewed Flowers's medical records but did not examine Flowers, also testified. Dr. Caldwell disagreed with the RFC assessments of Drs. Raber and Lubin and opined that Flowers could perform at least light work. A vocational expert testified, inter alia, that a person capable of lifting and carrying ten pounds frequently and twenty pounds occasionally, and sitting, standing or walking for six hours in an eight-hour work day (i.e., light work) could perform Flowers's past relevant work as a cashier, motel desk clerk or waitress.

## D.    ALJ's Second Decision

On March 26, 2009, the ALJ denied Flowers's application, finding that: (1) Flowers had not engaged in substantial gainful activity since May 15, 2001; (2)

6

Flowers had severe impairments of lupus, rheumatoid arthritis and degenerative joint disease of the cervical spine;[2] (3) Flowers's impairments or combination of impairments did not meet or equal a listed impairment; (4) Flowers had the RFC to perform work at the light exertional level, which included lifting and carrying twenty pounds occasionally and ten pounds frequently, sitting up to six hours in an eight-hour workday and standing and/or walking up to six hours in an eight-hour workday; and (5) Flowers could perform her past relevant work as a motel desk clerk, cashier/stock checker, waitress or mobile home sales person. In determining that Flowers retained the RFC to perform light work, the ALJ relied on the opinion of Dr. Caldwell, gave very little weight to the opinions of Drs. Raber, Lawrence-Elliott and Lubin and partially discredited the testimony of Flowers and her friend Stevens.

## E. Second Appeals Council Decision

Flowers sought review with the Appeals Council and submitted additional medical evidence. Among other things, Flowers submitted: (1) Dr. Lawrence-Elliott's treatment notes for examinations conducted in June 5, 2008, October 9,

---

[2]The ALJ found that Flowers also had the non-severe mental impairment of mood disorder. Although Flowers challenged this finding before the Appeals Council, she did not raise it in the district court and does not raise it in this Court. Therefore, we do not address it. See Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999) (explaining that a claimant waives an argument that was not raised in the district court); Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994) (explaining that issues not raised on appeal are abandoned).

2008 and April 8, 2009; (2) an April 8, 2009 "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" in which Dr. Lawrence-Elliott opined that Flowers, inter alia, could lift and carry ten pounds occasionally and less than ten pounds frequently, stand and walk less than one hour and sit less then two hours in an eight-hour work day, sit for fifteen minutes and stand for ten minutes before changing positions and occasionally twist, stoop and climb stairs, but that Flowers could never crouch or climb ladders and needed to lie down at unpredictable intervals with undetermined frequency; and (3) medical records indicating that Flowers received home health care between May 4, 2009 and June 30, 2009.

The Appeals Council made this additional evidence part of the record. The Appeals Council stated that it had considered Flowers's reasons for her disagreement with the ALJ's decision and her additional evidence. The Appeals Council concluded "that this information does not provide a basis for changing the Administrative Law Judge's decision." The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

Flowers appealed to the district court. A magistrate judge entered a report ("R&R") recommending that the district court affirm the Commissioner's

decision. Over Flowers's objections, the district court adopted the R&R and affirmed the Commissioner's denial of benefits. Flowers filed this appeal.[3]

## II. DISCUSSION

### A. Physicians' Opinions

On appeal, Flowers argues that the ALJ erred when it discounted the opinions of her treating physicians, Drs. Raber and Lawrence-Elliott, and the consulting/examining physician, Dr. Lubin, and instead relied on the opinion of Dr. Caldwell, a consulting physician who did not examine her.

In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is amply supported, whether an opinion is consistent with the record and the doctor's specialization. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. Id. §§ 404.1527(d)(4), 416.927(d)(4). Usually, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of examining physicians are given more weight than

_____

[3]We review the Commissioner's findings of fact to determine whether they are supported by substantial evidence and the Commissioner's legal conclusions de novo. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

non-examining physicians. See id. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). A non-examining doctor's opinion that contradicts an examining doctor's medical report is accorded little weight and cannot, standing alone, constitute substantial evidence. Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991). However, the ALJ may rely on a non-examining physician's opinion if it does not contradict the examining physician's medical findings or test results in the medical report. See id. at 585.

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to "give good reasons" for not giving weight to a treating physician's opinion).

10

In determining Flowers's RFC, the ALJ relied upon the opinion of Dr. Caldwell. Dr. Caldwell reviewed Flowers's medical records, but did not examine or treat Flowers. Dr. Caldwell opined Flowers could perform light work.[4] Although Flowers's medical records contained "a lot of subjective complaints of pain and fatigue," Dr. Caldwell pointed out that there were "no significant clinical findings" to support them. As examples, Dr. Caldwell noted that although Dr. Lawrence-Elliott said in April 2008 that Flowers had synovitis of her fingers, Dr. Lawrence-Elliott also noted that Flowers had "five over five normal grip, normal dexterity" and that Dr. Lubin's report did not note any swelling in Flowers's hands or other joints.

Dr. Caldwell testified that she did not agree with Dr. Raber's functional limitations because he: (1) did not provide or cite medical evidence to support his conclusions; (2) appeared to assign arbitrarily certain limitations, noted as check marks on his report, because he did not give very complete physical findings; (3) had not examined Flowers for approximately three months at the time of his findings; and (4) his last examination in February 2005 made no mention of

---

[4]Light work involves lifting no more than twenty pounds at a time, with frequent lifting and carrying of objects weighing up to ten pounds and a good deal of walking, standing or sitting and manipulating arm and leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

11

Flowers's extremities or whether she had any limitations in this respect and only commented on a tender upper back spasm.

Dr. Caldwell did not agree with Dr. Lubin's functional limitations because they were inconsistent with his own clinical findings. In particular, Dr. Lubin, after conducting musculoskeletal extremity and neurological exams on Flowers, did not report any significant deficits other than noting that she had a small (1/4") skin rash, had a slow, steady gate and was unable to perform the heel-to-toe walk.

Dr. Caldwell's opinion was based on her review of the medical records. Dr. Caldwell particularly emphasized the exam findings of Dr. Lubin in 2008 and Dr. Bolling Dubose in 2003 that there was no physical evidence of rheumatoid arthritis and Dr. Lawrence-Elliott's note that Flowers had only "some synovitis."

In crediting Dr. Caldwell's opinion over the opinions of Drs. Raber, Lubin and Lawrence-Elliott, the ALJ pointed to Dr. Caldwell's testimony that Dr. Raber's RFC assessment was not supported by the medical evidence and Dr. Lubin's RFC assessment was inconsistent with his own examination, which indicated that Flowers "was completely normal." The ALJ explicitly stated that he gave "very little weight to the opinions of Dr. Raber, Dr. Lawrence-Elliott and Dr. Lubin." By way of explanation, the ALJ then noted:

12

Even Dr. Lubin noted in May 2008, that the claimant had a mildly decreased range of motion in her cervical spine and a full range of motion in her back, shoulders, wrists, hips, hands, knees and ankles. He also noted that her grip and pinch strength in both hands was 5/5. I also note that in July 2003 the claimant reported that she washed dishes, prepared meals, made the bed, vacuumed, and did the laundry. She also reported that she went to church on a regular basis and socialized.

(Exhibit citations omitted).

The ALJ articulated good cause for giving very little weight to the opinions of Drs. Raber and Lubin as to Flowers's RFC. Moreover, the ALJ was entitled to rely on Dr. Caldwell's opinion because it was consistent with the treating and examining physicians' underlying clinical findings. See Edwards, 937 F.2d at 584-85 (concluding that the ALJ properly relied on the consulting, non-examining doctor's opinion because it was not inconsistent with the results of the tests administered by the examining doctor and provided an interpretation of Edwards's limitations not found in the examining doctor's report). Thus, although an ALJ generally gives treating and examining physicians' opinions more weight, here the ALJ was not required to do so. See Sharfaz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) ("[T]he ALJ may reject any medical opinion if the evidence supports a contrary finding.").

Moreover, the ALJ's reasons for discounting the treating and examining physicians' medical opinions are supported by substantial evidence. When Dr.

13

Raber, Flowers's family physician, opined in April 2003 that Flowers had some functional limitations, including a substantially weakened left hand grip, his opinion was not supported by his own physical exam conducted the day before, which noted no limitations, or by a consultative exam conducted by Dr. Bolling Dubose that same month, which noted that Flowers's extremities had no limitation of motion, her hands had normal range of motion, her grip strength was four on a five point scale and her fine manipulation, gross manipulation and functional use of her hands were normal. Dr. Raber's opinion was also inconsistent with Flowers's July 2003 report to a consulting psychologist that she did some yard work and housework, including washing dishes, making beds, vacuuming, doing laundry and preparing meals.

When Dr. Raber opined in May and June 2005 that Flowers had significant limitations, he did not physically examine her at those times or refer to any previous examinations. Indeed, Dr. Raber's treatment notes from September 2004 to his last examination in February 2005 did not note any neurological abnormalities or limitations in Flowers's back or extremities. Dr. Raber indicated that his May 2005 opinion as to Flowers's limitations was based on an MRI. However, the results of the July 2004 MRI show a normal cervical cord, only mild

14

impingement at C2-3 and C5-6 and moderate stenosis at C3-4.[5] Thus, Dr. Raber's opinions as to Flowers's RFC were not consistent with his own clinical findings or imaging results.

When Dr. Lubin, the consulting physician, examined Flowers in May 2008, he found no evidence of joint involvement and Flowers was able to grasp, pinch, stoop, kneel and bend. Flowers's strength tests were normal, she had only mildly decreased range of motion in her cervical spine and a full range of motion in her back, shoulders, wrists, hips, hands, knees and ankles, she had "5/5" grip strength in both hands and was able to tie her shoes. Thus, Dr. Lubin's RFC assessment was not supported by his clinical findings.

Finally, the only medical records before the ALJ from Dr. Lawrence-Elliott, Flowers's rheumatologist, did not support either Dr. Lubin's or Dr. Raber's RFC assessment. According to these records, Dr. Lawrence-Elliott first treated Flowers for rheumatoid arthritis in 2002 and 2003 and then again on April 30, 2008. Dr. Lawrence-Elliott's treatment notes reflect that Flowers experienced multiple joint pain, but also that Flowers's condition appeared to improve between 2003 and

---

[5]Dr. Raber's letters in July 2004 and December 2005, stating in conclusory fashion that Flowers was totally disabled and unable to work, were not medical opinions entitled to any special significance. See 20 C.F.R. §§ 404.1527(e), 416.927(e) (explaining that an opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is disabled or unable to work, is not considered a medical opinion and is not given any special significance, even if offered by a treating source, but will be taken into consideration).

15

April 30, 2008. On that date, Dr. Lawrence-Elliott saw evidence of bilateral synovitis in Flowers's finger joints and swelling and tenosynovitis in her ankles. However, Dr. Lawrence-Elliott noted Flowers had normal range of motion in her shoulders, elbows, hips, knees, ankles, feet and spine, except her cervical area; had normal range of motion bilaterally in the hands and wrists and had a grip strength of "5/5" bilaterally. Notably, the ALJ's RFC determination did not contradict Dr. Lawrence-Elliott's October 2008 recommendation that Flowers avoid heavy lifting, bending or twisting at the waist or sitting for prolonged periods.

In sum, because the ALJ articulated good cause for discounting the opinions of Flowers's treating and examining doctors and because the consulting doctor's opinion was consistent with the medical record, including the treating and examining doctors's own clinical findings, the ALJ did not err in giving more weight to the consulting doctor's opinion.

**B.    Flowers's Subjective Complaints**

When a claimant attempts to establish disability through her own testimony of pain and other subjective symptoms, a three-part "pain standard" applies. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that

16

the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Id. If the ALJ determines that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of the claimant's pain limits her ability to work. 20 C.F.R. §§ 404.1529(b), 416.929(b). At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians and other evidence of how the pain affects the claimant's daily activities and ability to work. Id. §§ 404.1529(c), 416.929(c).

A claimant's testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires . . . that the testimony be accepted as true." Id. at 1561-62.

Here, the ALJ found the testimony of Flowers and Stevens credible only to the extent it was consistent with his RFC determination that Flowers could perform light work. The ALJ's reasons for partially discrediting Flowers and

17

Stevens were the same as his reasons for discounting the opinions of Flowers's treating and examining doctors, namely that their testimony was not supported by the medical record or Flowers's own report to a consulting psychologist that she performed various household chores and regularly attended church and socialized.

Moreover, the ALJ's credibility finding is supported by substantial evidence. As noted above, the medical evidence before the ALJ, including the doctors' clinical findings and treatment notes, did not confirm the severity (i.e., intensity, persistence and limiting effects) of Flowers's alleged pain. In April 2003, Flowers complained to Dr. Dubose that her pain was so severe that she could not move, but Dr. Dubose's clinical findings show that Flowers had full range of motion in her lumbar spine and no limitations in her extremities, and Flowers's reflexes and coordination were normal. Despite Flowers's claims of immobilizing pain, Dr. Dubose found no clinical evidence to support the diagnosis of rheumatoid arthritis.

Also, despite Flowers's claims that her symptoms were getting worse, Dr. Lawrence-Elliott recommended, in April 2008, that she exercise regularly–three to five times a week for a 20-to-60-minute period. Around the same time, Dr. Lubin found that Flowers had a full range of motion, was able to ambulate, albeit slowly, without an assistive device, and could grasp, pinch, stoop, kneel and bend. And,

the consultative exams performed by Dr. Lubin and Dr. Dubose revealed normal and benign findings.

Additionally, Flowers's own statements to the agency indicated that she was physically active in 2003.  In particular, Flowers reported to a consulting psychologist that she did some household chores, including preparing meals, washing dishes, making the bed, vacuuming and doing laundry; she could dress herself with some assistance; and she could do yard work such as gardening. Similarly, in a 2003 Daily Living Questionnaire, Flowers stated that she vacuumed, mopped and shopped weekly; she cooked, washed dishes and did laundry daily; and that she needed help only when her hands or feet cramped or when she felt tired.

We also reject Flowers's contention that the ALJ misapplied the pain standard.  The ALJ specifically stated that Flowers had medically determinable impairments of lupus, rheumatoid arthritis and degenerative joint disease of the cervical spine.  Although the ALJ did not state explicitly that these impairments could reasonably be expected to produce the pain Flowers alleged, this finding is implicit in the ALJ's decision.  Reading the decision as a whole, the ALJ found that Flowers had impairments that could reasonably be expected to produce pain and the other symptoms Flowers alleged, but the ALJ did not believe the

19

testimony of Flowers and Stevens as to the <u>severity</u> of Flowers's pain and other symptoms, i.e., their intensity, persistence and functionally limiting effects. <u>See</u> <u>Foote</u>, 67 F.3d at 1561 (explaining that once an impairment meeting the pain standard is established, the ALJ must then consider evidence "about the intensity, persistence, and functionally limiting effects of pain or other symptoms" in addition to "the medical signs and laboratory findings in deciding the issue of disability"); <u>see also</u> 20 C.F.R. § 416.929(c)(1) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work . . . .").[6]  In sum, the ALJ's reasons for not fully crediting Flowers's subjective complaints were supported by substantial evidence in the record before the ALJ.

**C.    Appeals Council's Denial of Remand**

---

[6]To the extent Flowers argues that the ALJ must make explicit findings as to each of the pain standard's three steps, she cites no authority for this proposition.  Even assuming <u>arguendo</u> that the ALJ erred in failing to make an explicit finding, any such error was harmless given that the ALJ proceeded to the next step and evaluated the intensity, persistence and limiting effects of Flowers's pain.  <u>See</u> <u>Diorio v. Heckler</u>, 721 F.2d 726, 728 (11th Cir. 1983).

After the ALJ's decision, Flowers submitted additional evidence of her medical condition. Flowers contends the Appeals Council erred by not remanding her case to the ALJ to consider this new evidence. We agree.

Generally, a claimant is allowed to present new evidence at each stage of this administrative process. See 20 C.F.R. §§ 404.900(b), 416.1470(b); Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. 20 C.F.R. §§ 404.970(b), 416.1470(b). However, the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the administrative law judge hearing decision" and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id.[7] The new evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987).

---

[7]The parties do not dispute that the new evidence related to the period on or before the ALJ's decision. Furthermore, the Appeals Council appears to have concluded that the new evidence related to the relevant period. See 20 C.F.R. §§ 404.970(b), 416.1470(b) (requiring the Appeals Council to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision").

21

When a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence. Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980).[8] If the Appeals Council merely "perfunctorily adhere[s]" to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and we must remand "for a determination of [the claimant's] disability eligibility reached on the total record." Id.[9]

We conclude that the Appeals Council did not adequately consider Flowers's new evidence. Indeed, apart from acknowledging that Flowers had submitted new evidence, the Appeals Council made no further mention of it or

_____

[8]Decisions of the former Fifth Circuit on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[9]Flowers requests a "sentence four" remand under 42 U.S.C. § 405(g) because she submitted her new evidence to the Appeals Council and now argues that the Appeals Council did not adequately consider it in denying her request for review. See Ingram, 496 F.3d at 1268 (explaining that a sentence four, as opposed to sentence six, remand is appropriate when the evidence was properly before the Appeals Council, but "the Appeals Council did not adequately consider the additional evidence" (quotation marks omitted)). Notably, unlike with sentence six remands, the Appeals Council's review power does not include a requirement that the claimant show good cause. See id. at 1262-69 (concluding the district court erred in refusing to consider new evidence that was submitted to the Appeals Council because the claimant had not shown good cause); 42 U.S.C. § 405(g) (imposing a "good cause" requirement in sentence six, but not sentence four); 20 C.F.R. §§ 404.970, 416.1470 (requiring the Appeals Council to evaluate new and material evidence related to the relevant period without imposing a good cause requirement).

22

attempt to evaluate it. Furthermore, there is a reasonable possibility that Flowers's new evidence would change the ALJ's decision.

The ALJ based its finding that Flowers could do light work on the opinion of Dr. Caldwell, a non-examining physician. The ALJ took the unusual step of relying on a non-examining physician's opinion and discounting entirely the opinions of treating and examining physicians because the treating and examining physicians' clinical findings obtained during examinations of Flowers, such as grip strength or range of motion, were either normal or only mildly affected. The ALJ also partially discredited Flowers's subjective complaints primarily for the same reason.

Nonetheless, the Appeals Council adopted the ALJ's decision without addressing the post-hearing evidence submitted by Dr. Lawrence-Elliott, a treating physician. In particular, the evidence from Dr. Lawrence-Elliott contained an RFC assessment that was supported by significant clinical findings from three examinations performed by Dr. Lawrence-Elliott over a ten-month period between June 2008 and April 2009.

Specifically, Dr. Lawrence-Elliott's April 8, 2009 RFC assessment indicated that, in an eight-hour work day, Flowers: (1) could only occasionally lift ten pounds and frequently lift less than ten pounds, (2) could walk less than one hour

and sit less than two hours; (3) would need to change position every fifteen minutes; and (4) would need to lie down at unpredictable times.  As a basis for her opinion, Dr. Lawrence-Elliott noted the active tenosynovitis in Flowers's hands, wrists, feet and ankles, her decreased range of motion and her grip strength of 2+/5 bilaterally–i.e., her findings from her examination of Flowers performed that same day.  Dr. Lawrence-Elliott opined that Flowers could twist, bend and climb stairs only occasionally; could never crouch or climb ladders; and was limited in her ability to reach, handle, finger, feel or push/pull.  As support for these restrictions, Dr. Lawrence-Elliott again noted Flowers's limited range of motion and also her pain and weakness.

Dr. Lawrence-Elliott completed the RFC assessment on the same day she examined Flowers.  Dr. Lawrence-Elliott's treatment notes from this April 8, 2009 examination indicate that Dr. Lawrence-Elliott observed: (1) "[l]imitation of motion in lateral rotation and flexion" in the cervical spine;  (2) "evidence of bilateral synovitis" in joints in Flowers's fingers and wrists "with mild ulnar deviation"; (3) "[d]ecreased range of motion at hands with grip strength of 2+/5 bilaterally"; (4) "[m]arked tenosynovitis" in Flowers's ankles; (5) tenderness in Flowers's hip joints and knees; and (6) "[s]ynovial changes" in the joints in her feet.  Dr. Lawrence-Elliott indicated that recent lab tests had produced high results

24

for C Reactive Protein and SGOT and SGPT (liver function tests) and that Flowers had tested positive for Hepatitis B. Dr. Lawrence-Elliott administered a corticosteriod injection to Flowers's right hip, prescribed a fourteen-day taper of Prednisone (in addition to prescriptions for Naprosyn, Methrexate and Lortab), recommended daily bed rest of 45 to 60 minutes and range of motion exercises and ordered, <u>inter alia</u>, additional lab tests and X-rays of Flowers's hands, wrists, feet and ankles.[10]

In other words, unlike the earlier, discounted RFC assessments, Dr. Lawrence-Elliott's RFC assessment (dated April 8, 2009) is supported by her clinical findings from the June 2008, October 2008 and April 2009 examinations. As a treating physician, Dr. Lawrence-Elliott's opinion must be given substantial weight absent good cause. See <u>Lewis</u>, 125 F.3d at 1440; 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Moreover, as a non-examining physician, to the extent Dr. Caldwell's opinion contradicted Dr. Lawrence-Elliott's

---

[10]Dr. Lawrence-Elliott made similar clinical findings during a June 5, 2008 exam, including: (1) grip strength of 3/5 bilaterally, (2) evidence of synovitis in Flowers's finger joints and wrists (but normal range of motion) with mild ulnar deviation; (3) tenderness with palpation in the shoulder, elbow and wrist; (4) tenderness and decreased range of motion in the hip; (5) tenderness in the knee with hypertrophic changes; and (6) tenderness to palpation and soft tissue swelling and synovitis in the knees. During an October 9, 2008 exam, Dr. Lawrence-Elliott noted: (1) synovitis in Flowers's finger joints and wrists with mild ulnar deviation; (2) tenderness in her hip with decreased range of motion; (3) tenderness in her knee with varus and hypertrophic changes; (4) tenderness to palpation and soft tissue swelling and tenosynovitis in her ankles.

opinion, Dr. Caldwell's opinion must be accorded little weight. See Edwards, 937 F.2d at 585.

In addition to Dr. Lawrence-Elliott's records, Flowers also submitted other medical records indicating that, beginning on May 4, 2009, Flowers received home health care from Tugaloo Home Health. Dr. Lawrence-Elliott ordered the home health care to "improve independence and ease with" Flowers's activities of daily living.

According to a medical report prepared by Anna Sewell, RN, Flowers previously had been able to dress herself with assistance, bathe herself with intermittent supervision and help getting in and out of the tub, get to the toilet, walk with assistance or supervision, and feed herself with supervision or meal setup. However, as of May 4, 2009, Flowers was entirely dependent upon someone else to dress, needed assistance to bathe and eat, used a bedside commode because she could not get to the toilet and could not ambulate or wheel herself.

Home health care lasted until June 30, 2009, during which time an occupational therapist provided self care, functional mobility and energy conservation training and therapeutic exercise. By the time Flowers was discharged, she could walk up to 40 or 50 feet with a cane or walker, dress herself

if the clothes were laid out and bathe and get to the toilet with assistance. Tugaloo discharged Flowers to the care of her husband.

These records, as well as Dr. Lawrence-Elliott's treatment notes and RFC assessment, provide support for the testimony of Flowers and her friend, Stevens, about the extent to which Flowers's pain and other symptoms limited her daily activities. As such, there is a reasonable possibility that the ALJ would have more fully credited their testimony if he had seen this new evidence. Given the materiality of Flowers's new evidence to the ALJ's RFC finding, the Appeals Council's failure to evaluate it, alone, requires us to remand this case to the Appeals Council for a disability determination based "on the total record." See Epps, 624 F.2d at 1273.

For the reasons stated above, we affirm the ALJ's original decision to discount the opinions of Flowers's treating and examining physicians as of May 2008 and to only partially credit Flowers's subjective complaints. However, we reverse the Appeals Council's decision not to remand the case to the ALJ based on Flowers's new, post-hearing evidence, especially the April 2009 opinion of Dr. Lawrence-Elliott. Accordingly, we remand the case to the district court with instructions that it be returned to the Commissioner for consideration of the post-hearing evidence in conjunction with all the other evidence in the record.

**AFFIRMED IN PART, REVERSED IN PART and REMANDED.**